A. Patrick TONTI, Plaintiff-Appellant,

v.

James C. PETROPOULOUS and Richard B. Metcalf, Defendants-Appellees.

Nos. 79–3555, 79–3634.

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1981.

Decided July 27, 1981.

A. Patrick Tonti, pro se.

Paul A. Weick, Weick & Gibson Co., L.P.A., Warren W. Gibson, James Bickett, Cuyahoga Falls, Ohio, J. Vincent Aug, Nieman, Aug, Elder & Jacobs, Cincinnati, Ohio, for plaintiff-appellant.

J. J. Chester, Paul G. Lukeman, Columbus, Ohio, for Metcalf.

David Cupps, Vorys, Sater, Seymour & Pease, John Elam, Columbus, Ohio, for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This action, filed by appellant A. Patrick Tonti pursuant to 42 U.S.C. § 1983, grows out of proceedings in the Probate Court of Franklin County, Ohio, in the administration of the estate of Alfred E. Tonti, appellant's father, who died in January 1972.

Before reaching the issues on the present appeal, we find it necessary to set forth the proceedings in the State courts in some detail.

I

Appellant Tonti, a licensed Ohio attorney was named as executor in his father's will. Appellant's mother, the sole beneficiary of the estate, opposed the appointment of her son due to his claim of ownership of certain shares of stock in Tonti Securities, Inc., the main asset of the estate. Thereafter, ap-

pellant and his mother agreed that because of their conflicting claims as to ownership of the stock, he would not qualify as executor and she would not seek appointment as administratrix with will annexed.

Probate Judge Richard B. Metcalf appointed James Petropoulous and a local bank as co-administrators of the estate with will annexed. The bank later withdrew, leaving Petropoulous as the sole administrator.

Tonti filed exceptions in the Probate Court to the inventory listed in his father's estate by the administrator, claiming that he was the owner of the Tonti Securities, Inc. stock by an inter vivos gift from his father. After eleven days of evidentiary hearings on stock ownership, Probate Judge Metcalf filed comprehensive findings of fact, overruled Tonti's exceptions to the inventory, and held that the decedent owned the shares. This decision was affirmed by the Court of Appeals of Franklin County, Ohio, on April 10, 1975. The Supreme Court of Ohio refused to hear an appeal.

In August 1975, Tonti filed in the Probate Court a motion for relief from the 1974 judgment on the ground of newly discovered evidence which, according to his assertion, demonstrated that he owned the stock by purchase, and not by virtue of an inter vivos gift as claimed at the trial. He filed an affidavit of prejudice seeking to disqualify Judge Metcalf from hearing the motion. In accordance with the provisions of Ohio Revised Code § 2101.39, the issues raised by the affidavit of prejudice were submitted to Ohio's then Chief Justice C. William O'Neill. On October 27, 1975, Chief Justice O'Neill held that no disqualifying bias or prejudice existed on the part of Probate Judge Metcalf. On December 9, 1975, Judge Metcalf overruled appellant's motion for relief from the 1974 judgment.

From this order Tonti appealed to the Franklin County Court of Appeals, contending that the Probate Court erred by overruling the motion for relief from judgment (1) without conducting an evidentiary hearing and (2) by not granting a new trial by reason of his alleged newly discovered evidence. A third assignment was as follows:

> Appellant Was Denied A Fair Hearing Before An Unbiased Judge By Reason Of The Bias And Prejudice Of The Probate Judge In Favor Of The Administrator Of The Estate And Bias And Prejudice Against Appellant.

The Court of Appeals affirmed the decision of the Probate Court denying relief from judgment.

Tonti thereupon appealed to the Supreme Court of Ohio, presenting the following propositions of law:

1. Where a party properly raises the issue of the bias and prejudice of the trial court judge in an appeal from a decision of that judge, the court of appeals has jurisdiction to decide that issue regardless of whether the chief justice has ruled on a pretrial affidavit of prejudice.

2. A party is denied his due process right to a fair trial before an impartial judge when, before trial, on an affidavit of prejudice, the trial judge admits under oath that he is biased in favor of the opposing party, and such judge proceeds to hear the case.

3. Where a trial judge enters judgment and is later disqualified because of his bias and prejudice, and the finding by the chief justice under Article IV, Section 5, Ohio Constitution, is based upon facts in existence prior to the entry of that judgment, the judgment must be reversed by reason of such bias and prejudice.

4. A party who files a motion for relief from judgment under Ohio Civil Rule 60(B), where the motion is not frivolous or without merit on its face, is entitled to a fair opportunity to present all relevant evidence in support of the motion either by an evidentiary hearing or by affidavit.

On April 8, 1977, the Supreme Court of Ohio sua sponte dismissed Tonti's appeal "for the reason that no substantial constitutional question exists therein." On June 3, 1977, the Supreme Court of Ohio denied Tonti's motion for a rehearing.

Tonti thereupon filed a petition for a writ of certiorari in the Supreme Court of the United States, stating the following reasons for granting the writ:

1. The Decision Below Violates the Due Process Clause of the Fourteenth Amendment by Denying Petitioner's Right to a Trial Before a Fair and Unbiased Judge.

2. The Decision Below Violates the Due Process Clause of the Fourteenth Amendment in That the Prejudiced Probate Judge Denied Petitioner a Full and Fair Opportunity to Present All of His Evidence in Support of His Claim for Relief From Judgment.

The Supreme Court denied certiorari. *Tonti v. Tonti*, 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

During the pendency of his 1976 appeal to the State Court of Appeals, Tonti filed a second motion in the Probate Court and a second affidavit of prejudice against Judge Metcalf, stating that he intended to call Judge Metcalf as a material witness. Chief Justice O'Neill thereupon removed Judge Metcalf from further participation in the case. Judge Harold S. Ewing, sitting by designation as Probate Judge, denied Tonti's second motion for relief from judgment. Judge Metcalf was not called as a witness. Tonti perfected an appeal from Judge Ewing's decision to the Ohio Court of Appeals, urging that the Probate Judge erred in refusing to set aside the final judgment of November 1, 1974, "by reason of the bias and prejudice of Judge Metcalf on that date," and the ruling of Judge Metcalf dated December 9, 1975, "for the reason that the ruling is void and a nullity because of Judge Metcalf's breach of his mandatory duty to disqualify himself in this proceeding." The Court of Appeals affirmed the decision of Judge Ewing.

II

Tonti filed the present action in the district court on March 20, 1979, against Probate Judge Richard B. Metcalf and James Petropoulous, administrator of the estate. The complaint was signed by Tonti pro se. He prayed that the district court declare that Tonti is the owner of the shares of Tonti Securities, Inc., and the administrator and the estate hold the stock as constructive trustees for Tonti; order the administrator to deliver the shares to Tonti; enjoin the administrator from making further claims of ownership of the stock; and declare that all proceedings undertaken by Judge Richard Metcalf concerning the estate of Alfred E. Tonti, deceased, "are unconstitutional and of no legal force and effect."

He alleged fraud and collusion by Judge Metcalf, Petropoulous and the late Chief Justice of Ohio, C. William O'Neill. He prayed for actual damages against administrator Petropoulous of $1,250,000 and punitive damages of $3,750,000.

In a comprehensive opinion rendered after the conclusion of Tonti's evidence, District Judge Joseph P. Kinneary granted the motions of defendants for a directed verdict. We affirm.

III

■ As stated above, Tonti's complaint asked the district court to assume jurisdiction as a probate court and grant him all the relief he was denied in the Probate Court and the appellate courts of Ohio. The district court clearly had no jurisdiction as to these matters.

■ It is well settled that the federal courts have no probate jurisdiction. *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Harris v. Zion's Bank Co.*, 317 U.S. 447, 450, 63 S.Ct. 354, 356, 87 L.Ed. 390 (1943); *Helvering v. Stuart*, 317 U.S. 154, 161, 63 S.Ct. 140, 144, 87 L.Ed. 154 (1943); *Blair v. Commissioner*,

300 U.S. 5, 9, 57 S.Ct. 330, 331–32, 81 L.Ed. 465 (1937); *Freuler v. Helvering*, 291 U.S. 35, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634 (1934); *Sutton v. English*, 246 U.S. 199, 207, 38 S.Ct. 254, 257, 62 L.Ed. 664 (1918); *Farrell v. O'Brien*, 199 U.S. 89, 101, 25 S.Ct. 727, 730, 50 L.Ed. 101 (1905); *Byers v. McAuley*, 149 U.S. 608, 615, 13 S.Ct. 906, 908, 37 L.Ed. 867 (1893); *Starr v. Rupp*, 421 F.2d 999, 1004 (6th Cir. 1970); *Old Kent Bank v. United States*, 362 F.2d 444, 448 (6th Cir. 1966); *Louisville Trust Company v. Smith*, 330 F.2d 483, 487 (6th Cir. 1964), *cert. denied*, 380 U.S. 943, 85 S.Ct. 1024, 13 L.Ed.2d 962 (1965); *Spears v. Spears*, 162 F.2d 345, 348 (6th Cir.), *cert. denied*, 332 U.S. 768, 68 S.Ct. 78, 92 L.Ed. 353 (1947); *Divine v. Unaka National Bank*, 125 Tenn. 98, 140 S.W. 747 (1911).

## IV

This litigation represents yet another misuse of 42 U.S.C. § 1983 in an attempt to obtain federal jurisdiction. This civil rights statute was never intended as a catch-all under which a myriad of suits, traditionally within the exclusive jurisdiction of state courts, can be brought in the federal courts. *Ryan v. Aurora City Board of Education*, 540 F.2d 222, 225–26 (6th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977), citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reversing* 505 F.2d 1180 (6th Cir. 1974). Jurisdiction cannot be attained in the federal courts by the procedural device of filing an insubstantial action under § 1983. *Bates v. Dause*, 502 F.2d 865, 867 (6th Cir. 1974).

Furthermore, this Circuit has made it plain that the filing of an action under § 1983 cannot serve as a basis for relitigating questions previously decided in the State courts. *See Coogan v. Cincinnati Bar Association*, 431 F.2d 1209, 1211 (6th Cir. 1970), in which this court said: "The Civil Rights Act was not designed to be used as a substitute for the right of appeal," or to make a collateral attack upon the final judgment of the highest court of a state and relitigate the issues which it decided.

In *Coogan*, this court pointed out that the remedy of the appellant was to petition the Supreme Court of the United States for a writ of certiorari. Tonti has resorted to that remedy and the Supreme Court denied the writ. 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

## V

Tonti contends that he was deprived of his constitutional right of a fair trial because his claim was determined by a biased and prejudiced probate judge. As demonstrated in Part I of this opinion, this issue has been decided adversely to Tonti's claim more than once by the appellate courts of Ohio. This precise issue was presented to the Supreme Court of the United States in Tonti's petition for certiorari, which was denied. 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

The district judge ruled that the doctrine of res judicata barred Tonti's claim that he was denied a fair trial because of the bias and prejudice of Probate Judge Metcalf.

In his well-reasoned opinion, District Judge Kinneary said:

Plaintiff bases his second claim against defendant Metcalf upon this defendant's alleged bias during his consideration of the plaintiff's first motion for relief from judgment. The opportunity for full and fair litigation of this claim has been provided to the plaintiff on more than one occasion, the most important of which culminated in the judicial determination on the issue by the Chief Justice of the Ohio Supreme Court pursuant to § 2101.-39 of the Ohio Revised Code. Moreover, plaintiff was afforded further opportunity to raise his claim of judicial bias both on appeal from Judge Metcalf's denial of the first motion for relief from judgment, and in his second motion for relief from judgment, considered and denied by Judge Ewing.

All of these judicial proceedings are now final and this Court must conclude that further litigation of the plaintiff's second claim against Judge Metcalf is barred by the doctrine of res judicata.

We agree. *Coogan v. Cincinnati Bar Association*, 431 F.2d 1209 (6th Cir. 1970); compare *Del Rio v. Kavanagh*, 441 F.Supp. 220 (E.D.Mich.1977).

In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 417, 66 L.Ed.2d 308, 316 (1980), the Supreme Court wrote that the legislative history of § 1983 does not in any clear way suggest that Congress intended "to repeal or restrict the traditional doctrines of preclusion" and that Congress did not intend to override "the common-law rules of collateral estoppel and res judicata." To like effect see *Harrington v. Vandalia-Butler Board of Education*, 649 F.2d 434, 437–39 (6th Cir., 1981).

## VI

■ With respect to the action against appellee Petropoulous, the district judge ruled as follows:

Based upon the allegations contained in the complaint and pursued at trial before this Court, defendant Petropoulous could be held liable for the alleged deprivation of plaintiff's constitutional right only if it appeared that this defendant participated in a conspiracy with defendant Metcalf, the result of which was to render defendant Metcalf biased against the plaintiff or in favor of some other participant in the probate proceedings. Upon consideration of all the evidence presented by the plaintiff in support of his claim against defendant Petropoulos, construing all such evidence most strongly in favor of the plaintiff, and considering all the inferences that could be reasonably drawn from such evidence, the Court finds that the plaintiff has presented no evidence sufficient to create a material issue of fact for the jury to decide on the allegation of conspiracy between the defendants. Stated otherwise, the Court concludes that reasonable minds could not arrive at different conclusions with respect to plaintiff's claims against defendant James C. Petropoulos. Accordingly, the motion for directed verdict made on behalf of defendant Petropoulos must be granted.

We conclude that this holding is fully supported by the record.

## VII

■ The district court awarded attorney fees against Tonti and in favor of defendant Petropoulous in the sum of $65,725 and in favor of Judge Metcalf in the sum of $38,101.35. The court found that Tonti's suit in the present case is "contrived, frivolous, unreasonable and without foundation." We conclude that the latter finding is supported abundantly by the record.

Tonti contends that the district court erred in awarding the attorney fees. Appellees assert that the fees were reasonable and that they are entitled to additional fees for their services in this court.

In a comprehensive opinion attached as an appendix to this opinion, the district judge made detailed findings as to the basis of his determination of attorney fees. We cannot say that the district court abused its discretion in awarding attorney fees against Tonti or in the amount of the fees determined.

However, we conclude that the attorney fees allowed by the district court are sufficient for services rendered both in the district court and in this court. Therefore, we approve the allowance of the fees determined by the district court but reject the claim of appellees for any additional attorney fees for the services rendered in this court.

All of the other contentions made by appellant have been considered and found to be without merit. The judgment of the district court is affirmed. The costs are taxed against the appellant, A. Patrick Tonti.

APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

A. PATRICK TONTI,

Plaintiff

vs.                                                    C-2-79-279

JAMES C. PETROPOULOS, et al.,

Defendants

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motion of the defendants Petropoulos and Metcalf for an award of attorney fees in this action. This Court determined in its order of July 9, 1979 that both defendants were entitled to a directed verdict in this action and that, because the plaintiff's claims were "contrived, frivolous, unreasonable and without foundation," the defendants were entitled to recover attorney fees.

The plaintiff brought this suit alleging that the defendants, a probate judge and the administrator of the estate of the plaintiff's father, had conspired to deny the plaintiff due process of law. The ultimate result of this denial of due process was that a large block of securities which the plaintiff claimed to own was held to be the property of his father's estate, the sole beneficiary of which is the plaintiff's mother. The pertinent allegations and the evidence adduced at trial are included in the Court's July 9, 1979 opinion and need not be recounted here.

On July 27, 1979 the Court denied the plaintiff's motions for a new trial and to modify judgment by disallowing the fee award. The plaintiff renewed the motions to disallow fees on July 30, 1979, which motions were denied orally at the hearing on the motion for fees held on September 7, 1979.

The Court has found that this action, without regard to the existence of subjective bad faith, was frivolous. That finding entitles the defendants, in the Court's discretion, to recover their attorney fees under 42 U.S.C. § 1988.[1] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The sole issue to be resolved by the Court is the amount of those fees.

In this case, the attorneys for the defendants have supplied detailed affidavits listing the hours spent in the defense of this action, and describing the activities engaged in during those hours. The attorney for the defendant Metcalf has supplied the actual time records ordinarily kept by his firm, while the attorneys for the defendant Petropoulos have supplied an affidavit listing particularly the date and the service performed for the hours submitted. At the hearing on the motion, the plaintiff chose not to cross-examine counsel for the defendant Petropoulos, and only briefly cross-examined counsel for the defendant Metcalf. In sum, the Attorneys for the defendant Petropoulos have presented evidence that 716 hours were spent by their law firm in the defense of this action, for which they seek an award of $61,215.00. They also seek an additional $2,510.00 in costs for a

---

1. 42 U.S.C. § 1988, as amended, provides in pertinent part that

   [i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

total award of $63,725.00. Counsel for the defendant Metcalf seek a total award of $38,101.35 which includes costs in the amount of $806.35.

In determining the amount to be awarded in attorney fees pursuant to 42 U.S.C. § 1988 and similar statutes, courts have considered a plethora of factors any one of which may justify a court in exercising its discretion to augment or diminish an award. Among those factors which are particularly relevant here are the experience, reputation and ability of the attorneys, the customary fee in the community, the complexity of the issues, the amount involved and the results obtained. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (CA5, 1974); *Beazer v. New York City Transit Co.*, 558 F.2d 97, 100 (2nd Cir., 1977) (complexity of case and risk to clients of loss on legal issues).

In addition to these factors, the Court is also guided by the underlying purpose for granting any award to a prevailing defendant under 42 U.S.C. § 1988. The Supreme Court in *Christiansburg Garment Co. v. EEOC, supra*, pointed out that Congress did not intend that plaintiffs and defendants be treated equally by the statute, despite the use of the inclusive term "prevailing party." While the purpose of a plaintiff's fee award is to encourage the vindication of the policies of the civil rights statutes through private attorneys general, the award of fees to a prevailing defendant is intended only to prevent the extreme case, i. e., the civil rights claim which is frivolous, unreasonable, and without foundation. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. The Court found that the purpose for allowing defendant fees was "to deter the bringing of lawsuits without foundation" and "to discourage frivolous suits." *Id.* at 420, 98 S.Ct. at 700.

It is clear from these statements that the function of fee awards in cases such as this is neither to punish plaintiff in a purely retributive sense, nor simply to compensate the defendant for having to defend such a case. The function is largely an equitable one, in which the Court may limit an award necessary to deter a given plaintiff or others in order to prevent a windfall to the defendant which may not be justified in light of the other factors above mentioned.

The principal objections raised by the plaintiff are that the proof adduced by the defendants was insufficient to justify an award, and that the requested amounts are unreasonably high in light of the circumstances of the case and in comparison with similar cases. As to the defendant's proof, the Court is satisfied with the detail and authenticity of the documents produced. The plaintiff's chief objection here is that the defendants' counsel did not show that all of the time spent was reasonably necessary to the defense of this action. The plaintiff, however, has not challenged the assertion of counsel that, in their professional judgment, all of the time spent was reasonably necessary; nor has the plaintiff challenged, by cross-examination or other evidence, the necessity of any particular aspect of defense counsel's preparation. In these circumstances, it is the Court, once it is disclosed precisely what was done, who can best determine the necessity of that work to the defense presented. The plaintiff's objection to the amount of evidence produced is therefore without merit.[2]

As to the amounts claimed, the plaintiff objects to rates of between $100.00 and $120.00 per hour claimed by the lead counsel for the defendant Petropoulos. These rates are requested for slightly less than half of the total hours spent by their law firm on this defense.[3] There is no question

---

**2.** Courts have treated the need for specificity in proof of the reasonableness of attorney fees differently, *compare King v. Greenblatt*, 560 F.2d 1024 (CA1, 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161, *with Cruz v. Beto*, 453 F.Supp. 905 (S.D.Tex.1977), but the Court is satisfied with the specificity of the proof here even under the more stringent standards.

**3.** The average hourly rate requested by all of the attorneys for the defendant Petropoulos, who are all members of the same firm, is $85.50 per hour. These counsel have supplied an affidavit from a reputable member of the

that the rates requested are equal to or less than those charged by these attorneys to private clients. As such, it is appropriate to start with this customary rate in determining a fee award. *Aumiller v. University of Delaware*, 455 F.Supp. 676, 678 (D.Del. 1978). The question before the Court then becomes whether, in the circumstances of this case, there exist reasons which should cause the Court to award less than the usual hourly rate for these attorneys.

The Court notes initially that, in terms of experience, reputation and quality of work, these attorneys are of the highest calibre, easily able to command for their work in this community the rates which they have requested. The issues in this case were complex because the plaintiff's theory was not totally clear. The risk of loss to their client was grave. This case, if lost by the defendants, involved the potential vacation of prior state proceedings and, in theory, the potential loss of an enormous asset in the estate of the plaintiff's father. The filing of this action had the effect of blocking a sale involving the stock the plaintiff claims to own. The result obtained by defense counsel here was the best possible—a directed verdict in a prompt trial.

The plaintiff has cited many cases awarding lower hourly rates, but it must be kept in mind that virtually all of those cases involved awards to counsel for *plaintiff.* The purpose of such awards is to provide an incentive great enough to attract competent counsel to represent often impecunious plaintiffs. Awards larger than necessary to accomplish that goal amount to a windfall to plaintiff's counsel. Here the purpose is to deter this plaintiff particularly, and other plaintiffs generally, from prosecuting clearly baseless claims. *Prate v. Freedman*, 583 F.2d 42, 46 (CA2, 1978). Since the purpose is to deter this plaintiff, it is relevant that he has battled in numerous state forums for some seven years in order to keep this huge asset out of his father's estate. The plaintiff's own tactics and

choice of counsel during this entire period demonstrate his own willingness to pay premium rates for the best legal talent available. He knew or should have known that the defendant Petropoulos would do the same to protect a large portion of the estate for the benefit of the plaintiff's mother. He knew or should have known, because of the proposed sale of some of the stock which was blocked by this action, that counsel for the defendants would approach this case on an "emergency" basis. Thus, while an award of less than lead counsel's usual rate might be sufficient to deter another plaintiff from pursuing frivolous civil rights claims, the Court does not feel that less than the customary rate would be sufficient here.

There are other differences between plaintiff and defendant fee awards which must be taken into account. A court may wish to discourage a plaintiff's counsel from wasteful "kitchen sink" pleading, and will therefore refuse to compensate a successful plaintiff for hours spent preparing a plainly meritless alternative theory. On the other hand, a defendant's counsel must take his lead from the plaintiff, and prepare adequately for all claims and theories arguably raised by the pleadings. The Court is of the opinion that defense counsel's preparation for claims not pursued by the plaintiff or for defenses they were not required to present was completely necessary under the circumstances of this case.

It should also be noted that a major concern of courts dealing with an award of plaintiff's fees is not present here. This award will not be paid from public funds. In school desegregation cases, therefore, our Court of Appeals has been careful to hold awards to the amount necessary to achieve the purpose of the award and no more. *E. g., Oliver v. Kalamazoo Board of Education*, 576 F.2d 714 (CA6, 1977). The use of public funds for attorney fees in those cases makes less funds available for the education of the

---

Columbus legal community who opines that $85.00 per hour, in light of the practices in his own firm and other firms comparable to that of these defense counsel, "is reasonable and fair and consistent with the billing practices in this community." Based upon the Court's own knowledge of the Columbus legal community, the Court agrees.

children sought to be benefitted. *Id.* at 718 (Weick, J., concurring); *cf. Reed v. Cleveland Board of Education*, 607 F.2d 737 (1979) (payments to special masters and consultants in school desegregation case to be made from public funds should be kept "as low as is reasonably possible.") The concerns of those cases are plainly lacking here.

The Court also rejects the plaintiff's objections to the use of paralegals and law graduates awaiting their bar results. These services, for which reasonable rates are requested, would have otherwise been performed by lead counsel at a much higher hourly rate, and the award would be even larger. *Aumiller v. University of Delaware*, 455 F.Supp. 676, 679 (D.Del.1978). "In addition, remuneration for out-of-pocket costs is permissible." *Id.* at 678.

In sum, the Court finds the evidence submitted sufficient and the rates requested reasonable to support the amounts requested by counsel for the defendants for the high quality work performed in this case. The plaintiff, in anticipation of this award, has moved to stay the award pending appeal. The plaintiff has offered no reason why a failure to stay this order would cause the "irreparable harm" he alleges. More importantly, the motion is premature under the Federal Rules of Civil Procedure. The motion to stay will therefore be denied without prejudice to its renewal in accordance with Rule 62, F.R.C.P. after entry of this order.

WHEREUPON, the Court determines that the motion of the defendants for an award of attorney fees and costs is meritorious and it is therefore GRANTED. The Court hereby awards to the defendant Petropoulos the sum of $63,725.00 and to the defendant Metcalf the sum of $38,101.35, both amounts to be paid by the plaintiff. The motion for a stay of this award is DENIED without prejudice.

IT IS SO ORDERED.

The Clerk shall enter judgment in favor of the defendants in the amounts above stated.