Benita R. KAIMOWITZ, Plaintiff,

v.

Harry HOWARD, Superintendent of Ann Arbor Public Schools, Herbert S. Moyer, Director of Personnel, Ann Arbor Public Schools, in their official capacities and individually; their agents, assignees, and employees, and successors, in their official capacities; Ann Arbor Board of Education Members Kathleen Dannemiller, Joseph Vaughn, Lana Pollack, Donna Wegryn, John Powell, Peter Wright, John Heald, Wendy Barhydt, and Pattie Cerny, their agents, assignees, and employees, and successors in their official capacities, and the Ann Arbor School District, Defendants.

Civ. A. No. 80–71714.

United States District Court,
E. D. Michigan, S. D.

Sept. 30, 1982.

Puerto Rican Legal Defense & Education Fund, Inc. by Gabe Kaimowitz, New York City, for plaintiff.

Miller, Canfield, Paddock & Stone by Gilbert E. Gove, Gillian Steinhauer, Detroit, Mich., for defendants.

## OPINION

GILMORE, District Judge.

This matter is before the Court upon two motions, plaintiff's motion for a new trial and defendants' motion for assessment of costs and attorney's fees. For the reasons set forth below, plaintiff's motion for a new trial is denied, defendants' motion for attorney's fees is denied in part and granted in part, and defendants' motion for costs is granted as modified.

## I

In April of 1981, plaintiff Benita Kaimowitz filed suit against the Ann Arbor School District; the School Superintendent, Harry Howard; the Director of Personnel, Herbert Moyer; and the nine members of the Ann Arbor School Board alleging that she was subjected to racial discrimination when defendants failed to hire her for a teaching position. Plaintiff, who is white, claimed that she was refused employment at the Roberto Clemente Developmental Center because of her husband's role in representing black students in a prior suit against the defendants.[1] Thus, plaintiff's theory is that she was discriminated against because of her association with black people.

Claims were filed under 42 U.S.C. §§ 1981, 1983, 1985(2), (3) and 2000e–3. Defendants filed a motion for partial summary judgment on these claims on September 10, 1980. Plaintiff's counsel stipulated to the dismissal of the 42 U.S.C. § 2000e claim, and, after argument on the motion for summary judgment, the §§ 1985(2) and (3) claims were dismissed for failure to state a cause of action.

In a second motion for summary judgment, argued on January 8 and January 20, 1981, the Court granted summary judgment on all claims against Superintendent Howard and the nine School Board members; the Court also granted summary judgment on the § 1983 claim against the School District.

At that point, the only remaining counts were §§ 1981 and 1983 claims against Dr. Moyer, the Superintendent of Personnel, and a § 1981 claim against the school district.

A five day jury trial began on October 19, 1981. At the close of plaintiff's proofs, the Court directed a verdict on behalf of defendant Moyer on the § 1983 claim, and directed a verdict on the punitive damage issue. On October 23, 1981, the jury, after deliberating about two hours, returned a verdict of no cause for action on the remaining § 1981 claim against both Dr. Moyer and the School District.

## II

### DEFENDANTS' MOTION FOR COSTS AND ATTORNEY'S FEES [2]

#### A. *Attorney's Fees*

Defendants' first claim is for total attorney's fees amounting to $62,229.53. Defendants' bill for attorney's fees includes $40,095.48 for various services performed and $19,453.15 for "miscellaneous services", including answering the complaint, responding to plaintiff's motion for preliminary injunction, attending depositions, preparing interrogatories, responding to document requests, preparing a pretrial order, preparing a bill of costs, miscellaneous research, and office work.

The Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, authorizes the award of attorney fees to prevailing

---

1. The prior suit, known as the "Black English" case, was *Martin Luther King, Jr. Elementary School Children v. Ann Arbor School District,* 473 F.Supp. 1371 (1979). In this case black children who were students at an elementary school brought an action claiming that they spoke "black vernacular" which resulted in impediment to their equal participation in the instructional programs, and that the school had not taken appropriate action to overcome the barrier. The Court held that the school had not taken appropriate action to assure the children's equal participation in the instructional programs and ordered the school to take steps to help teachers recognize the home language of students and to use that knowledge in their attempts to teach reading skills and standard English.

2. Plaintiff contends that neither she nor her husband should be liable for fees and costs, and that any such relief granted to defendants must be levied against the Legal Services Corporation, whose recipient grantee employed her attorney full time at the time this action was commenced.

 This argument misconceives the nature of attorney fees and costs. Attorney's fees and costs are not assessed against the opposing attorney but are assessed against the parties. Therefore the fees and costs assessed in this case are assessed against the plaintiff, Benita Kaimowitz.

parties in certain civil rights actions. In pertinent part, the statute states:

> In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986] title IX, of Public Law 92–318 [20 U.S.C. §§ 1681 et seq.] ... or title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Similarly, Congress has provided for award for attorney's fees in actions brought under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5(k) provides:

> In any action or proceeding under this title [42 U.S.C. § 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the cost, and the Commission and the United States shall be liable for costs the same as a private person.

The United States Supreme Court has twice considered the question of whether a prevailing defendant in an action brought under Title VII or 42 U.S.C. § 1983 may recover attorney's fees from a plaintiff. In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648, (1978), the Court held that under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., a Federal District Court may award attorney fees to a prevailing defendant only upon a finding that the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith. In discussing the matter, the court said:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claim, for seldom can a prospective plaintiff be sure of ultimate success. ...

> ... [To assess] attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. *Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.* (emphasis added)

*Id.* at 421, 422, 98 S.Ct. at 700, 701.

In *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 73, 66 L.Ed.2d 163, (1980), the Court held that the standard applied in determining whether a defendant should recover attorney's fees in civil rights actions under 42 U.S.C. § 1983 is the same as the standard applied in civil rights actions under Title VII.

█ It thus appears clear that all attorney's fees petitions under 42 U.S.C. § 1988 should be analyzed under the standard of *Christiansburg* and *Hughes*. This standard dictates that a defendant may not recover attorney's fees unless the plaintiff's actions were frivolous, meritless, groundless, or without foundation, even though not brought in subjective bad faith.

Under *Christiansburg* and *Hughes,* attorney's fees should be awarded to a prevailing defendant only if the plaintiff had no colorable claim. In *Christiansburg,* the Court cautioned district judges to resist concluding that, because a plaintiff did not prevail, the claim was frivolous. Similarly, in *Hughes,* the Court noted that even allegations that are dismissed for failure to state a claim are not necessarily groundless. If those allegations received the Court's careful consideration, they cannot be labelled frivolous.

Other courts applying the *Christiansburg* standard have concluded that a claim is frivolous if there is no evidence produced to support plaintiff's claim or if plaintiff has no colorable legal theory. For example, in *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir. 1981), the plaintiff filed a complaint in Federal District Court alleging that the administrator of his father's estate and the State Probate Judge conspired to deny plaintiff due process of law. The Sixth Circuit found that plaintiff was essentially asking the Federal Court to assume jurisdiction as a probate court even though federal courts have no probate jurisdiction. The Court labelled the case as "yet another misuse of 42 U.S.C. § 1983 in an attempt to obtain federal jurisdiction." 656 F.2d at 216. In addition, the issue raised by plaintiff's claim had more than once been decided adversely by the courts of Ohio. The Sixth Circuit affirmed the District Court's award of attorney's fees based on the finding that the plaintiff's claim was "contrived, frivolous, unreasonable, and without foundation." 656 F.2d at 217.

In *Prochaska v. Marcoux,* 632 F.2d 848 (10th Cir. 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981), the court reached a similar conclusion. Plaintiff, a boat owner, sued a State Wildlife Conservation Officer for alleged violation of the owner's civil rights. The defendant had observed the plaintiff operating his boat without a current registration license and proceeded to check plaintiff's fishing license and safety gear. Plaintiff was tried and convicted of violating the State boating safety laws and then initiated a civil rights action against the Conservation Officer. Although plaintiff's complaint alleged that the Officer's actions were performed knowingly, intentionally, maliciously, and in utter disregard of plaintiff's rights, the plaintiff acknowledged that he was violating the State safety laws and that defendant did not enter or search plaintiff's boat. The court found that the claim was clearly frivolous, unreasonable and groundless, and awarded attorney's fees to the defendant.

Defendants in the instant case contend that all of plaintiff's claims were groundless

and that they are entitled to recover attorney's fees for the entire case. Defendants have submitted a Bill of Costs and Attorney's Fees which is divided into fees for services performed in various parts of the case.

The largest portion of defendants' Bill of Costs is a request for $28,703.23 in attorney's fees for preparation and trial of the claims against Dr. Moyer and the School District and for a motion to strike the punitive damage claim. The defendants maintain that these claims were frivolous because the Court directed a verdict in favor of Dr. Moyer on the § 1983 claim and struck the punitive damage claim, and the jury returned a verdict of no cause of action on the other two claims.

■ The Court does not agree with defendants' contentions. The mere fact that plaintiff ultimately lost does not establish that the claim was frivolous. Plaintiff had a reasonable basis for maintaining the action at trial even though she lost. Her theory was that she was being discriminated against because of her relationship with her husband who was asserting rights on behalf of black children.

The Sixth Circuit has recognized a right to sue in cases similar to this one. In *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266, (6th Cir. 1977), the court held that a white plaintiff had standing to sue his former employer under § 1981 for discharging him in alleged retaliation for plaintiff's protesting the alleged discriminatory firing of a black co-worker.

Similarly, in *DeMatteis v. Eastman Kodak,* 511 F.2d 306 (2d Cir. 1975), the court held that a white employee had standing under § 1981 to maintain an action against his employer for forcing him into premature retirement solely because he had sold his house, located in a neighborhood inhabited principally by white employees, to a black fellow employee.

■ Thus, there was a colorable legal basis to support plaintiff's claim. Further, the Court found that plaintiff had produced

sufficient evidence to allow two of the three claims to go to the jury. Therefore, the Court cannot conclude that plaintiff's claims were frivolous. No attorney's fees will be awarded for the time spent preparing for and trying the lawsuit.

Defendants also contend that they should be awarded fees for attorneys' services rendered in connection with other portions of the case. The first request is for $2,223.75 for services performed in relation to defendants' September 9, 1980 motion for partial summary judgment on the claims brought under 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), and 2000e–3. Plaintiff stipulated to dismissal of the § 2000e–3 claim, and, after oral argument, the § 1985 claims were dismissed.

▇▇▇ As noted earlier, a claim is not frivolous merely because it was dismissed. Although plaintiff's 2000e–3 claim was clearly inapplicable, it would be unwise policy to assess attorney's fees when plaintiff stipulated to dismiss this portion of her claim early in the suit. Further, it is difficult to award attorney's fees for preparation of a motion for partial summary judgment when the motion was granted only in part. Finally, the § 1985 claims were dismissed only after consideration of the parties' briefs and oral argument. Therefore, the Court finds that the claims were not frivolous within the meaning of *Christiansburg*. Attorney's fees will not be awarded for services rendered in connection with this motion.

Defendants next request attorney's fees for services rendered in connection with the motion on December 23, 1980. After oral argument, the Court dismissed all claims against Superintendent Howard and the nine Board Members and granted summary judgment on the § 1983 claim against the School District.

▇▇▇ It appears that there was no basis in fact for plaintiff to institute an action against Superintendent Howard and the nine School Board members. It must have been clear to her that they had nothing to do with her failure to be hired at Roberto Clemente School. Plaintiff had no basis to believe that these people had anything to do with the decision not to hire plaintiff. Lawyers cannot start lawsuits and make allegations against defendants without some basis in fact. D.R. 7–102 of the Code of Professional Responsibility clearly provides that a lawyer shall not knowingly advance a claim or defense unwarranted under existing law. Plaintiffs in civil rights cases cannot with impunity make shotgun charges, naming every person connected with the defendant, unless there is some minimal basis for the claim. Plaintiff's claims against these defendants were frivolous and therefore defendants should receive attorney's fees for filing and arguing this motion for summary judgment. The amount claimed here is $5,980.00.

After the motion for summary judgment was granted, plaintiff filed a motion for rehearing on the dismissal of the § 1983 claim against the District. This motion was denied without hearing.

Plaintiff then opposed entry of defendant's proposed order based upon the Court's ruling granting partial summary judgment, and on February 25, 1981, filed a motion for entry of her own proposed order. Plaintiff raised three arguments in support of her requested order. First she claimed that, although both Superintendent Howard and the nine School Board members were no longer defendants, she could proceed against their unnamed and unserved agents, assignees, employees, and successors. Second, plaintiff asserted that the grant of summary judgment resulted in a dismissal without prejudice. Third, plaintiff contended that the Court had ruled that plaintiff could proceed against the School District directly under the Constitution, even after the § 1983 claim was dismissed. The Court rejected each of these assertions, and on April 3, 1981, entered defendants' proposed order with slight modification.

After Howard had been dismissed from the lawsuit, plaintiff filed a request for admissions against him, even though F.R. C.P. 36 states that requests for admissions can be served only on parties. This request

was denied by Magistrate Hackett on April 20, 1980.

■ Defendants seek an award of attorney's fees for services rendered in responding to the above-mentioned motions. Plaintiff's actions in continuing the fight to keep the School Board members in the lawsuit after the defendants' motion for summary judgment was granted were clearly frivolous. Therefore, the Court will award attorney's fees for defending these motions. The amount claimed here is $2,603.75.

■ Next, defendants seek an award of fees for research time spent on claims that were not pursued by plaintiff. The Court has no way of assessing whether those claims were frivolous. Therefore, attorney's fees will not be awarded.

■ Finally, defendants have requested costs in the amount of $19,494.40 for their attorneys' incidental expenses such as answering the complaint, attending depositions, preparation of interrogatories, research, and office work. These costs are normally taxable as part of an attorney fees award, but since the Court granted only a limited portion of defendants' requested attorney's fees, it will not award fees for these incidental services.

### B. *Costs*

Defendants' second request is for costs totalling $2,481.30.

Federal Rules of Civil Procedure 54(d) provides for the assessment of costs as follows:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

The costs which may be taxed are listed in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title;
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Defendants' bill of costs presents the following items: 1) court reporter fees totalling $754.40; 2) witness fees of $64.00; 3) subpoena and service costs of $53.00; 4) duplicating costs of $923.50; and 5) exhibit costs of $686.40.

### 1. *Court Reporter Fees*

The statute provides that court reporter fees are taxable if the transcript was "necessarily obtained for use in the case." Defendants' request for court reporter fees includes $130.50 for transcripts of hearings on the two motions for summary judgment and $623.90 for deposition costs.

■ The Court finds that the transcripts of the January 1981 hearings on the motion for summary judgment were necessary for use in the case because the plaintiff contested the entry of an order after the Court granted defendants' motion.

■ Although some courts have held that a deposition is necessarily obtained for use in the case only if it is introduced as evidence, *see, e.g. Marcoin, Inc. v. Edwin K. Williams & Co., Inc.,* 88 F.R.D. 588 (E.D.Va. 1980), other courts have held that deposition

costs are taxable if there was a reasonable need for the deposition. *See, e.g., Wahl v. Carrier Manufacturing Co.,* 511 F.2d 209 (7th Cir. 1975). Thus, a deposition may be reasonably necessary if it is used in connection with a successful motion for summary judgment. *See, e.g., Brown v. Inter-Ocean Ins. Co.,* 438 F.Supp. 951 (N.D.Ga.1977).

Defendants' request for costs includes the fees for depositions of plaintiff Kaimowitz, defendant Moyer, Joe Dulin, Harry Howard, Lee Bolt, and Dan Fader. Defendants assert that the depositions of Kaimowitz, Moyer, Dulin, and Howard were all relied on for defendants' motion for summary judgment. Bolt and Fader were deposed because they were listed as witnesses for plaintiff.

■ The Court finds that there was a reasonable need for all these depositions and will therefore tax costs in the amount of $623.90 for depositions and $130.50 for transcripts of the hearings on the summary judgment motion.

### 2. *Witness Fees*

Defendants have requested a total of $64.00 for Bolt's and Fader's attendance at deposition. Having determined that there was a reasonable need for these depositions, the Court will allow witness fees in the amount of $30 per day per witness, a total of $60.00.

### 3. *Subpoena and Service Fees*

The Court will allow defendants' request for $53.00 in subpoena and service fees for Bolt and Fader.

### 4. *Duplicating*

■ The defendants have requested $923.50 for duplicating pleadings, discovery documents, and other papers. Fees for copies are taxable if they were necessarily obtained for use in the case. Again, courts differ in their assessment of what is "necessarily obtained for use in the case." In this case, the Court will not allow costs for ordinary office copies. If defendant desires to pursue these costs, a more detailed list will have to be provided.

### 5. *Exhibits*

■ The defendants have requested $686.40 for the costs of two calendar charts and a miniaturization of the chart. The Court finds that the exhibits were merely illustrative and were not necessary for use in the case. Thus, the Court will not allow costs for these exhibits. *See Hill v. Gonzalez,* 53 F.R.D. 1 (D.Minn.1971).

### III

It thus appears that the claimed attorney's fees of the defendants which the Court finds reasonable and proper amount to $8,583.75, in addition to costs, which the Court will allow in the amount of $866.40. In normal circumstances, these fees should be awarded under the standards of *Christiansburg,* and *Hughes.*

The question arises, however, whether, because of the financial condition of the plaintiff, the Court should exercise its discretion to reduce the amount of these admittedly proper fees.

By letter of December 12, 1980, plaintiff's attorney set forth the income of plaintiff as follows: 1977, $7,834.00; 1978, $9,226.00; 1979, $4,806.00 and $51.00; and 1980, $1,550.00. No figures were furnished for the years 1981 or 1982, but during trial plaintiff testified that she worked part time for the Ann Arbor School District. Certainly her position there is not a lucrative one.

The basic case in the Sixth Circuit concerned with the award of attorney fees in civil rights cases for plaintiffs under the Civil Rights Attorney's Fee Award Act of 1976 is *Northcross v. Board of Education of Memphis,* 611 F.2d 624, (6th Cir. 1979), *cert. denied, Board of Education v. Northcross,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

*Northcross* pointed out that in awarding attorney's fees to prevailing plaintiffs in civil rights cases courts no longer should apply their historical equitable powers:

We begin our discussion of this statute by pointing out that in making fee awards in

civil rights cases today, courts are no longer applying their historical equitable powers to devise an adequate remedy. That power was sharply limited in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which rejected any inherent equitable power of the courts to award fees *when the plaintiffs were functioning as private attorneys general,* and ruled that any authorization for fees in such situations would have to come from Congress. Congress responded, enacting the Civil Rights Attorney's Fees Award Act expressly to fill the void left by *Alyeska.* This statute did more than simply enable the lower courts once again to award fees; rather than being an equitable remedy, flexibly applied in those circumstances which the *court* considers appropriate, it is now a *statutory* remedy, and the courts are obligated to apply the standards and guidelines provided by the legislature in making an award of fees....

*Id.* at 632.

*Northcross* concluded that a fee calculated in terms of hours of service is the fairest and most manageable approach.

■ It is thus clear that in cases where plaintiffs prevail their attorneys are entitled to reasonable attorney's fees calculated on an hourly basis and that the court retains no equitable discretion to lower the fees. The Court notes, however, that *Northcross* and *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) dealt with awards of attorney fees to a plaintiff, and the rationale behind the cases was that attorney fees should be awarded so as to not discourage plaintiffs who have viable claims from obtaining counsel to prosecute them. It is a clear policy of Congress that plaintiffs should be encouraged to file legitimate claims, and defendants should respond with reasonable attorney fees when such claims are pursued and won.

When, however, a plaintiff pursues a frivolous claim and the question is whether attorney's fees should be awarded to a defendant, a different situation prevails. In *Faraci v. Hickey-Freeman Co., Inc.,* 607 F.2d 1025 (2d Cir. 1979), the court held that, in light of plaintiff's monthly salary and basic living expenses, the trial court should ascertain whether, in determining the size of an attorney's fee award, a lesser sum would have fulfilled the statute's deterrent purpose without subjecting the plaintiff to financial ruin. In this case, the plaintiff's suit was found to be frivolous, and the question was the amount of the award of attorney fees to the defendant. The court pointed out that recent Congressional legislation on attorney fees did not require the abandonment of equitable principles that traditionally govern the court's discretion:

> Recent legislation extending the power of federal courts to award attorneys' fees by no means requires abandonment of the equitable principles that have traditionally governed a court's discretion in such matters. On the contrary, the express grant of authority to award fees presumes continued application of equitable considerations in appropriate cases, both to effectuate the broader legislative purpose and to do justice in the particular case. (Citing cases).

*Id.* at 1028.

The court pointed out that, because fee awards are an equitable matter, courts should not hesitate to take into account the relative wealth of the parties.

And in *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir. 1981), the Sixth Circuit found that the district court had not abused its discretion in awarding attorney's fees where the district court held that the function of awarding attorney fees was largely an equitable one.

■ It thus appears clear that in awarding attorney's fees to defendants who have prevailed in cases where plaintiff's claim is frivolous, the trial court retains a measure of discretion even in light of *Northcross.* Where the defendant is the prevailing party and plaintiff's case is found to be frivolous, courts retain discretion to balance the equities and take into consideration the relative

wealth of the parties in assessing attorney fees.

In *Hill v. BASF Wyandotte Corp.,* No. 79–74125, 547 F.Supp. 348 (E.D.Mich. June 30, 1982) (Freeman, J.), the Court, citing several decisions, rejected defendant's request for attorney's fees in the amount of $97,490.50, which it claims was reduced from its actual expenses of $166,490.55, "so as not to exact vengeance." The Court held that, when confronted with plaintiffs without adequate financial means to pay attorney's fees, courts have awarded various amounts, generally under $5,000. The Court stated, at page 356, of the opinion:

> When confronted with plaintiffs without adequate financial means to pay the attorney fees requested, courts in reported decisions have awarded various amount, (sic) generally under $5,000. *See e.g. Coleman v. General Motors Corp.,* 27 FEP CAS. 1009 (8th Cir. 1981), ($5,000 attorney fees awarded); *Farachi v. Hickey-Freeman, supra,* (Plaintiff with monthly income of $462 and expenses of $399; $200 in attorney fees awarded out of $11,500 incurred); *Colucci v. New York Times Co.,* [533 F.Supp. 1011 (S.D.N.Y. 1982)] (Plaintiff's annual income $19,000, three dependents; $1,500 attorney fees awarded out of $33,175 incurred); *Dailey v. District 65, UAW,* [505 F.Supp. 1109 (S.D.N.Y.1981)] (Attorney fees of $4,000 awarded). Defendant already has been awarded a total of $1,352.52 in costs. An award of attorney fees in the amount of $3,000 would accomplish the deterrent purpose of the statute, afford defendant some compensation for services required in the defense of this action, yet not financially cripple plaintiff. A larger amount might be warranted in view of plaintiff's poor attitude during the course of this litigation, but the Court believes that she was genuinely indignant over what she perceived as sexual harassment by her supervisor, and pursued what she perceived as a meritorious grievance.

 Here it is clear that Mrs. Kaimowitz is without adequate financial means to pay the requested attorney's fees. It is equally clear that an attorney's fee must be assessed against her for all of the reasons set forth in the statute and the various cases cited herein. The Court concludes that a reasonable attorney's fee to assess against Mrs. Kaimowitz is $4000.00, and the Court will assess such an attorney fee. The Court will also assess costs in the amount of $866.40.

### IV

Plaintiff has filed a motion for new trial, and the basis for the motion seems to be that the trial court erred in receiving as an exhibit an enlarged summary chart prepared by defendant summarizing the transactions that occurred in this case. Plaintiff contends that its submission and consideration by the jury was erroneous and highly prejudicial to plaintiff.

 The Court does not agree. Rule 1006 of the Federal Rules of Evidence provides that the contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in Court may be presented in the form of a chart, summary, or calculation. It further provides that the original of the writings shall be made available for examination or copying by other parties at reasonable times and places.

The chart here falls well within the authority of F.R.E. 1006, and there is no claim made by plaintiff that the underlying data was not at any time made available for her to study.

Therefore, there is no basis for plaintiff's claim that the Court erred in admitting this chart, and the motion for new trial will be denied.

An order in conformity with this opinion may be presented.