James **HUGHES**

v.

**DEFENDER ASSOCIATION OF PHILA-DELPHIA Benjamin Lerner.**

No. 78–2888.

United States District Court, E. D. Pennsylvania.

Feb. 20, 1981.

Edward J. Morris, Philadelphia, Pa., for plaintiff.

Francis J. Connell, III, Drinker, Biddle, & Reath, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff James Hughes, formerly chief investigator for the Defender Association of Philadelphia, brought this action against the Association and Chief Defender Benjamin Lerner, under 42 U.S.C. §§ 1981 and 1983, and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. He contended that he was discriminated against in the terms and conditions of employment and was demoted and finally terminated because he is black. The case proceeded to trial by jury, and on May 29, 1979, the jury rendered a verdict in favor of the defendants. On July 2, 1979, after hearing oral argument, I denied Hughes' motion for a new trial. Defendants now move for an award of counsel fees pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), and the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. § 1988.

Initially defendants moved for an award of attorneys' fees for the entire amount which they have expended in legal fees to defend this action. Defendants later modified their petition, however, limiting their request to those fees they incurred after the jury verdict in their favor.

Both statutory provisions cited by defendants provide that a "prevailing party" may be awarded counsel fees in the discretion of the court, and it is beyond dispute that prevailing defendants are eligible for an award of fees under both § 1988, *see Milburn v. Girard*, 455 F.Supp. 283 (E.D.Pa. 1978), and under the fee provisions of Title VII, *see Sek v. Bethlehem Steel Corp.*, 421 F.Supp. 983 (E.D.Pa.1976), *aff'd*, 565 F.2d 153 (3d Cir. 1977). The standard for determining whether a prevailing defendant is entitled to an award is the same under both provisions. *Milburn, supra.*

The Supreme Court set forth the standard for an award of attorneys' fees to a prevailing defendant in a civil rights action in *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978):

> a district court may in its discretion award attorney's fees to a prevailing party in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

Moreover, if a plaintiff brings an action which does not at first appear to be groundless, he may be liable for attorneys' fees if he "continued to litigate after it clearly became so." *Id.*, 412 U.S. at 422, 98 S.Ct. at 700. For the reasons stated below, I conclude that under the circumstances of this case the defendants are entitled to an award to compensate them for the fees they incurred after the jury returned a verdict in their favor.

### I. *Liability for Counsel Fees*

A strong argument can be made that Hughes should be held liable for *all* of the fees incurred by the defendants, because there was virtually no evidence that Hughes was a victim of racial discrimination. Initially, it bears mentioning that the Defender Association is a publicly-supported, legal services agency which represents indigent defendants in criminal proceedings in state and federal courts. A large percentage of its clientele is black, and its staff attorneys serve at salaries well below those which they could earn in pri-

vate practice. It is certainly not the type of organization which is likely to harbor officers or employees with racist attitudes.

At trial, Hughes' case consisted largely of his conclusory allegations that he had been discriminated against, and that his fellow employees were racists. Nothing in the evidence supported these allegations. Hughes had been very successful as an investigator for the Defender Association, and was eventually appointed chief investigator. During his tenure as chief investigator, however, those subject to his supervision became dissatisfied with what they believed to be high-handed and arbitrary actions by Hughes, and the staff investigators met with defendant Lerner to voice their complaints. Subsequently, two staff employees who had been particularly vociferous in complaining about Hughes were threatened by him with retaliation. After considering these and other complaints, Lerner told Hughes that he was being demoted back to staff investigator. When Hughes refused to accept the demotion, he was discharged. Hughes admitted at trial that he believed Lerner was in fact dissatisfied with Hughes' job performance; Hughes further admitted that he believed that Lerner really was convinced that Hughes had taken retaliatory actions against other staff investigators. Quite plainly therefore Hughes had no chance of establishing his charge that Lerner's actions were motivated by racial considerations. Similarly Hughes offered no evidence in support of his charge that he had been discriminated against in the terms and conditions of employment. Prior to trial, the Equal Employment Opportunity Commission, and the Office of Civil Rights Compliance of the Law Enforcement Assistant Agency both conducted detailed investigations of Hughes' complaints, and both concluded that there was no foundation for the charges.

At the close of the evidence, defendants moved for a directed verdict. Although I believed that Hughes had produced virtually no evidence to support a finding that he had been discriminated against, out of an abundance of caution I allowed the case to go to the jury, which after thirty minutes' deliberation returned a verdict in favor of the defendants.

Had they not withdrawn their request, defendants may well have been entitled to an award for the fees they incurred in defending the case until verdict; as demonstrated below, unquestionably they are entitled to an award for fees incurred thereafter. Following trial, Hughes moved for a new trial pursuant to Rule 59, F.R.Civ.P. His motion was unaccompanied by a memorandum of law, and he failed to order a copy of the transcript of the trial, both of which are required by the Local rules of the United States District Court for the Eastern District of Pennsylvania when a motion for a new trial is filed. None of the contentions raised in the motion had the slightest merit. For instance, Hughes averred that the court erred in refusing him the chance to put on rebuttal evidence, when in fact Hughes' counsel at trial stated at side-bar that he had no evidence to present which was not cumulative. Similarly, Hughes contended that the court erred in not instructing the jury in accordance with plaintiff's proposed instructions, when counsel for Hughes had not objected to the court's instructions at the time of trial. The motion advanced other contentions that were equally baseless.

Following my denial of the motion for a new trial, Hughes filed a notice of appeal. Defendants then moved pursuant to Rule 7, F.R.App.P., for an order directing Hughes to enter security for the payment of costs which they might incur in defending against the appeal. In a conference in chambers on August 16, 1979, with Mr. Hughes, counsel, and the court reporter present, I noted that I could see no purpose to be served in having this litigation continue, and cautioned Mr. Hughes that there was a distinct possibility of his incurring liability for costs and counsel fees. Mr. Hughes nevertheless expressed his intention to press his appeal. On September 7, 1979, I entered an order directing Hughes to file cash or a bond in the amount of $2,500 with the clerk of court, as security for the pay-

ment of costs incurred by the defendants on appeal. Hughes failed to file the bond, and the defendants moved to dismiss the appeal for his failure to comply with my order. On October 12, 1979, the Court of Appeals for the Third Circuit dismissed Hughes' appeal, with leave to comply with my order by posting security within 15 days of the date of dismissal. Hughes did not post security within the 15–day period. On December 4, 1979, Hughes filed with the Court of Appeals an application to proceed *in forma pauperis*. The Court of Appeals referred the petition to this court to determine whether the appeal was taken in good faith. 28 U.S.C. § 1915(a). On December 19, 1979, I held a hearing directed to this issue, at the end of which I certified that Hughes' appeal was not taken in good faith. On January 2, 1980, the Court of Appeals denied Hughes' petition for leave to appeal *in forma pauperis*.

As noted above, the defendants have generously withdrawn their petition for fees incurred to the time of verdict, totalling almost $18,000. Defendants do, however, seek to recover fees incurred after the jury's verdict had been rendered, and they are plainly entitled to them because Hughes continued to press his claim even after it was apparent that it was groundless. Once the jury had rendered its verdict, whatever slim chance Hughes had of prevailing on his claim evaporated. When Hughes continued to press his claim after trial, and even after counsel and the court warned him of the possible adverse consequences, clearly he was indulging in the kind of frivolous litigation which meets the standard for an award of attorneys' fees set forth in *Christianburg Garment Co., supra*. Significantly, it is not the defendants who are the real victims of Hughes' ill-advised suit. Rather, it is the clients of the Defender Association who are the victims, because resources which could have been used to provide services for them were diverted to the defense of this action.

1. I have previously held that like a prevailing plaintiff, a prevailing defendant in a civil rights

## II. *Amount of the Fee Award*

Defendants seek an award of $4,862.50 for fees paid to Francis J. Connell, III, of the firm of Drinker, Biddle, & Reath for Mr. Connell's services in representing them after trial and on appeal. The initial step in calculating an award of counsel fees is to determine the basic value of the attorney's services, known as the "lodestar" amount, which consists of the number of hours reasonably spent on the case, multiplied by a reasonable hourly fee. *Lindy Brothers, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*). Compensation for an excessive amount of time spent on any one aspect of the case may not be awarded as part of the lodestar amount. *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978).

Counsel for defendants avers by affidavit that he spent the following amounts of time in representing the defendants during post-trial proceedings:

### Conduct of the Case

| Activity | Dates | Hours |
|---|---|---|
| Response to Plaintiff's Motion for New Trial | 6/8/79 | 3.50 |
| Preparation of Motion to Dismiss Plaintiff's Motion | 6/18–20/79 | 6.00 |
| Preparation and Argument on Plaintiff's Motion for a New Trial and on Defendants' Motion to Dismiss said Motion | 6/28–29/79 | 3.75 |
| Preparation of Defendants' Motion to Direct the Filing of Security for Costs of Appeal | 8/3–8/79 | 1.75 |
| Conference with Judge Luongo | 8/16/79 | 1.50 |
| Preparation of Motion to Dismiss Appeal for Failure to File Security | 9/14–28/79 | 1.50 |
| Response to Appellant's Motion to Proceed in Forma Pauperis | 10/26/79 to 11/9/79 | 5.00 |
| Hearing on Plaintiff's in Forma Pauperis Motion | 12/19/79 | 2.75 |
| Response to Appellant's Motion to Third Circuit to Proceed in Forma Pauperis | 2/7/80 through 2/21/80 | 10.00 |
| Review of *Roadway Express v. Piper*, 48 USLW 4836 (6/23/80) | 6/23/80 through 7/18/80 | .75 |
| Preparation of this Affadavit and Summary of Service | 9/6–12/80 | 3.00 |

### Petition for Counsel Fees [1]

| | | |
|---|---|---|
| Preparation of Defendants' Motion for Attorneys' Fees and Associated Papers | 6/17–25/79 | 25.00 |
| Review of Plaintiff's Response to Defendants' Motion for Attorneys' Fees | 7/3/79 | 1.25 |

action is entitled to compensation for time spent by counsel in preparing a petition for

I conclude from this well-detailed summary that counsel did not spent an inordinate amount of time on any particular aspect of the post-trial proceedings, and that defendants are entitled to reimbursement for all of the hours claimed.

The other component of the lodestar is the hourly rate charged for the services rendered. Of the time devoted by counsel, 44.25 hours were devoted between May 30, 1979, and October 1, 1979, when counsel's normal hourly billing rate was $70.00; 18.5 hours were devoted between October 1, 1979 and September 1, 1980, when counsel's normal billing rate was $80.00; and 2.5 hours have been devoted since September 1, 1980, when counsel's normal hourly rate rose to $95.00. I find the hourly rates claimed by counsel to be reasonable in "light of all the circumstances of the litigation," *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1217 (3d Cir. 1978), and reasonable considering Mr. Connell's "experience, knowledge, and legal talent." *Lindy Brothers, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976) (*Lindy II*).

Accordingly, the lodestar amount calculated in accordance with *Lindy I* totals $4,862.50.

Once the lodestar amount has been determined, ordinarily the court is petitioned to raise or lower the fee to reflect the quality of counsel's work, the contingent nature of the case, or equitable considerations which may be present. Here, in a manner that is typical of the professionalism and restraint with which he has conducted himself throughout this case, Mr. Connell requests only that he be awarded the lodestar amount. As demonstrated above, the request is both fair and reasonable, and will be granted.

counsel fees. *Nash v. Reedel*, 86 F.R.D. 16, 19 (E.D.Pa.1980). *See Prandini v. National Tea*

*Company*, 585 F.2d 47, 53 (3d Cir. 1978).