Willie GILYARD, Plaintiff,

v.

**SOUTH CAROLINA DEPARTMENT OF YOUTH SERVICES, Defendant.**

Civ. A. No. 3:84–992–15.

United States District Court,
D. South Carolina,
Columbia Division.

June 20, 1985.

On Motion for Attorney's Fees
Sept. 5, 1985.

William L. Pyatt and Herbert E. Buhl, Columbia, S.C., for plaintiff.

William Edgar Salter, III and Vance Bettis, Gignilliat & Savitz, Columbia, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

The present action arises under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e *et seq.* The plaintiff herein, a former principal at the Reception and Evaluation Center School (hereinafter the "R & E School") contends that when the R & E School was merged with Willow Lane Junior High School (hereinafter "Willow Lane"), he was denied the position of principal of the merged schools on account of his race. The plaintiff also contends that the merger itself was accomplished for the racially discriminatory purpose of ousting him. The matter is before the court upon the defendant's motion for summary judgment.

The defendant, the South Carolina Department of Youth Services (hereinafter "DYS"), is a state agency responsible for the custody, supervision and rehabilitation of juvenile offenders committed to its custody by the Family Courts of South Carolina. S.C. Code Ann. § 20–7–3210 (Law Co-op.1976). DYS is designated as a special school district to operate on a twelve month basis, and the Department of Education Division of DYS is charged with providing academic and vocational training at the R & E School, Birchwood High School and Willow Lane. S.C. Code Ann. § 20–7–3240 (Law.Co-op.1976). Commitment to the Reception and Evaluation Center (hereinafter the "R & E Center"), how-

ever, is only a temporary commitment for evaluation purposes, and pursuant to law may not exceed forty-five days. S.C. Code Ann. § 20–7–2170 (Law.Co-op.1976).

The plaintiff, Willie Gilyard, is a black male who has served as principal at the R & E School from October 1, 1976, until on or about December 31, 1982.[1] In December of 1982, the R & E School was merged with Willow Lane, which was the DYS school designed to provide long term academic and vocational training to juveniles in grades 7 through 9 who have been committed to DYS for correctional and rehabilitative purposes. The reason given for the consolidation was that, in order for a DYS school to receive federal funds, the facility must certify that the average length of stay of a student at the school was thirty days or more. 34 C.F.R. § 203.2 (1984). DYS asserts that, in the fall of 1982, the average stay of a student at the R & E School had declined to twenty-eight days, and the downward trend was expected to continue, since state law mandated that no youth be retained at the R & E Center for a period exceeding forty-five days. In order to avert the loss of over Seventy Thousand Dollars ($70,000) in federal funds, the defendant asserts that it decided to merge the R & E School into Willow Lane, since the average length of stay at the larger Willow Lane school exceeded six months. By joining the two schools into one facility, the average length of stay of the combined student body would substantially exceed the federal thirty day requirement, and no federal funds would be lost. As a result of the merger of the two schools, the R & E School became an annex of Willow Lane (hereinafter the "Annex") and the existing principal of Willow Lane continued in his position as principal of Willow Lane, as merged. Plaintiff's position of principal of the R & E School was eliminated, and he was appointed assistant principal of Willow Lane and was in charge of the campus of the Annex. Furthermore, plaintiff was assigned instructional duties in addition to his administrative duties as assistant principal.

The plaintiff's complaint alleges that he was discriminated against because he was not named as principal of the merged school. Furthermore, during discovery, plaintiff has asserted that the merger itself was motivated by a desire to demote him on the basis of his race. The defendant has moved for summary judgment, contending (a) that plaintiff cannot make out a prima facie case of discrimination, and (b) that even if plaintiff has made out a prima facie case of discrimination, the defendant has asserted a legitimate nondiscriminatory reason for its actions (i.e., the loss of federal funding) and plaintiff has failed to rebut the same with evidence that the reason is pretextual.

■ In a disparate treatment case arising under Title VII, the plaintiff bears the initial burden of proving a prima facie case of discrimination. A prima facie case, as used in the context of Title VII, refers to the "establishment of a legally mandatory, rebuttable presumption" rather than "the presentation of enough evidence to permit the trier of fact to infer the fact in issue." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action it took. Should the defendant carry this burden, the plaintiff must then prove, by a preponderance of the evidence, that the reasons offered by the defendant were not legitimate and not its true reasons, but were a pretext for discrimination. At the second stage of the analysis, it is only the burden of production which shifts to the defendant; the burden of persuasion remains at all times with the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Cuthbertson v. Biggers Brothers, Inc.*, 702 F.2d 454 (4th Cir.1983).

1. Plaintiff served as a teacher at the R & E School from April 7, 1971 until October 1, 1976. On October 1, 1976, plaintiff was assigned as acting principal of the R & E School, and on October 25, 1976, he was named as principal of the school.

■ In the first allegation, i.e., that the defendant discriminated against him in failing to hire him as principal of the merged schools, the plaintiff must satisfy the traditional *McDonnell Douglas* test. In order to establish a prima facie case of discrimination in hiring, a plaintiff must prove: (a) that he belonged to a protected minority; (b) that he applied for and was qualified for a job for which the employer was seeking applicants; (c) that, despite his qualifications, he was rejected; and (d) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff cannot establish a prima facie case of discrimination against the defendant due to its failure to hire him as principal, since the second element in the *McDonnell Douglas* test cannot be established. When the R & E School and Willow Lane were merged, the position of principal of Willow Lane never became vacant. Prior to the merger, Clarence Fouché was principal of Willow Lane; subsequent to the merger, Mr. Fouché remained principal of Willow Lane as merged. The position of principal of Willow Lane simply never became vacant, and defendant never sought applicants to fill this position. Absent some evidence that the defendant had a vacant position for which it was seeking applicants, plaintiff cannot establish a Title VII action for his failure to be appointed to that position.

■ Throughout his deposition, plaintiff has raised the claim that, when the two schools were to be merged, the defendant should have vacated the principal's position of the resulting merged school and allowed him and Mr. Fouché to compete for this position. Plaintiff contends that his credentials exceed those of Mr. Fouché, and had the position been open to competition, he would have been selected. The legal error in this argument is that the defendant had no duty to open certain positions for competition upon the closing of the R & E School. The court has been able to find only one situation involving school closings when this duty would arise. The courts have held that in situations where a school is closed in implementing desegregation, if the plan reduces the number of positions available, the school system must consider all faculty for the remaining positions on the basis of objective, racially neutral criteria. *Reynolds v. Abbeville County School District No. 60*, 554 F.2d 638 (4th Cir.1977); *Chambers v. Henderson City Board of Education*, 364 F.2d 189 (4th Cir.1966). *See also Campbell v. Gadsden County District School Board*, 534 F.2d 650 (5th Cir.1976); *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir.1969). The requirement of opening remaining positions to competition, however, *does not* arise when reductions in school personnel are unrelated to desegregation. *Lee v. Tuscaloosa County Board of Education*, 591 F.2d 324 (5th Cir.1979); *Wright v. Houston Independent School District*, 569 F.2d 1383 (5th Cir.1978). The merger of Willow Lane and the R & E School was not effected to implement the integration of schools, and accordingly the defendant was under no obligation to declare the position of principal vacant and allow competition for that job. Plaintiff cannot support his allegation of discriminatory hiring by alleging that the principal's position of the merged schools was never open to competition.

■ Plaintiff has also contended that the merger itself was motivated by the desire to discriminate against him on the basis of race. In considering this claim, the court must determine which test of proving a prima facie case is most analogous to the present situation. Plaintiff claims he was "demoted" to assistant principal, while defendant contends that the plaintiff's job was completely eliminated with the merger and there was no demotion. In a "demotion" case, a prima facie case is established by a showing that: (a) the plaintiff was in the protected class; (b) the plaintiff has suffered an unfavorable employment action by an employer covered under Title VII; (c) the plaintiff was at the time of demotion performing his job at a

level that met his employer's legitimate expectations; and (d) that following his demotion his employer sought someone to perform the same work. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238–39 (4th Cir.1982); *Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir.1980). In a situation where a job is eliminated completely, i.e., a "reduction in force" (hereinafter "RIF"), the elements required to prove a prima facie case are: (a) that the plaintiff was within the protected class; (b) that the plaintiff suffered an unfavorable employment action at the hands of the employer; (c) that the plaintiff was qualified to assume another position at the time of the discharge or demotion; and (d) that the employer has not treated race neutrally, but has instead discriminated based upon it. Specifically, in order to establish this final element, the plaintiff must show that the defendant consciously refused to consider retaining or relocating a plaintiff because of his race, or that the defendant considered race as a negative factor in such consideration. *Fink v. Western Electric Company*, 708 F.2d 909 (4th Cir.1983); *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

■ The court deems the "RIF" test to be more closely applicable to the present situation. In a "demotion" case, the plaintiff must be able to show that, following the demotion, the defendant employer sought another person to perform the same duties. When Willow Lane and the R & E School merged, the position of principal of the R & E School was eliminated.[2] Since the position which plaintiff held was eliminated, the case would necessarily fail were the "demotion" test to be applied, as the

defendant employer did not seek another person to perform the same work. Because the plaintiff's former position was eliminated, the "RIF" test is more appropriate.

The plaintiff has no problem establishing the first two elements in a "RIF" case, since he is a member of a class protected by Title VII (i.e., black) and he suffered some adverse personnel action. In considering the third element, plaintiff contends that he was qualified to assume the position of principal of the merged schools. Plaintiff's case must fail on this issue, since there is no evidence that another position of principal was available for plaintiff to assume. Plaintiff has produced no "RIF" policy of defendant which would justify the contention that plaintiff had to be considered as a replacement for one of the principals at the other schools. Absent the identification of a job for which plaintiff was qualified and to which plaintiff had a right to transfer, his claim of discrimination fails.

Moreover, plaintiff is unable to establish, through competent evidence, any causal relationship between his race and the merger of the two schools. The plaintiff contends that his affidavit [3] and his deposition demonstrate the existence of a material fact concerning the defendant's motive in merging the two schools. In his affidavit, plaintiff states that: (a) he "does not agree that the loss of federal funds was the sole legitimate reason for the merger;" (b) he "believes that race was a factor in his demotion;" and (c) he "believes that had all parties been white with respect to the merger in question a more equitable result would have occurred." Plaintiff's affidavit at paragraph 7, 8 and 9. When asked at

---

**2.** In his objections to the magistrate's report, the plaintiff denies that he has ever admitted that his job was eliminated. Despite this denial, it is obvious that there is no longer a principal of the R & E School. There is no longer an R & E School, as it is now just an annex to Willow Lane. Since there is no longer an R & E School, it is apparent that the position of principal of the R & E School has been eliminated.

**3.** The court notes that plaintiff's affidavit was not submitted for the magistrate's consideration

in determining the summary judgment motion. Rule 56(e), Federal Rules of Civil Procedure. The affidavit should have been presented in opposition to defendant's motion for summary judgment, and should not have been withheld until after the magistrate entered his report and recommendation. Notwithstanding this procedural deficiency, the court will consider the matters asserted in plaintiff's untimely filed affidavit.

his deposition to state the facts upon which he bases his opinion, plaintiff admitted that he had no facts to support his contention. Deposition at 35. No one ever told the plaintiff that he was denied the position of principal of the merged schools because he was black. Deposition at 15. Plaintiff admits that the only reason ever articulated to him for the merger was that the defendant could lose over Seventy Thousand Dollars in funding because it could not certify that the average length of stay at the R & E School was over thirty days. Deposition at 19–22. Plaintiff's suspicion rests upon the fact that he was the only person negatively affected by the merger and the fact that he is black. Deposition at 16, 27. Plaintiff's statements that he believes he was discriminated against because he was adversely affected and he was black is simply insufficient to establish that race was a motivating or substantial factor in the defendant's decision to merge the two schools. The plaintiff's belief that he was the subject of discrimination, unsupported by any factual evidence, is merely conclusory and insufficient to withstand a motion for summary judgment. *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir.1983); *Locke v. Commercial Union Insurance Co., Division of Commercial Union Assurance Companies, Ltd.*, 676 F.2d 205, 206 (6th Cir.1982); *Stock v. Horsman Dolls, Inc.*, 27 F.E.P. Cases 1423 (D.S.C.1981). As stated in *Stock*, "a plaintiff must have some cold, hard facts from which a reasonable inference of discrimination can be made. Where no such facts exist, and guesswork or speculation would be required to find discrimination, the plaintiff has not met his burden of establishing a *prima facie* case." *Id.* at 1425–26. Even though plaintiff is a member of the protected class and has suffered an adverse personnel action, there is no evidence to establish the causal nexus between those two facts necessary to invoke Title VII. *See Ortiz v. CIBA–GEIGY*

*Corp.*, 87 F.R.D. 723 (N.D.Ill.1980). Accordingly, since plaintiff has adduced no facts which would support his belief that he was the subject of racial discrimination, the defendant is entitled to summary judgment.

In an effort to indicate a similar situation in which similarly situated white employees were treated differently, plaintiff cites an instance when a school in Florence, South Carolina, was closed to effect the consolidation of the defendant's schools in Columbia, South Carolina. Mr. Fouché, the white principal of the school in Florence, was transferred to Columbia to serve as principal of Birchwood High School, which had just opened. The court finds the cited instance to be inapposite to the present case. Birchwood High School was built to accommodate the consolidation of the defendant's schools in Columbia; the closing of the Florence school coincided with the opening of the new Birchwood High School. Mr. Fouché was appointed as the first principal of Birchwood High School, thus filling a position which was vacant when the school opened. Affidavit of Commissioner Harry W. Davis, Jr., at paragraph 7.[4] Unlike the Birchwood appointment, there was no principal's position vacant when Willow Lane and the R & E School were merged. Accordingly, the cited incident is not similar to the present case and is no evidence of racial discrimination.

Plaintiff also contends that there was a less discriminatory option available to defendant to avoid the loss of federal funds. Citing *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir.1971), plaintiff contends that the defendant's asserted business purpose must be sufficiently compelling to override any racial impact. The *Robinson* case, however, dealt with a claim of the disparate impact of a facially neutral seniority system. By contrast, the present action involves a claim of *disparate treat-*

4. In his affidavit, plaintiff contends that Mr. Davis was not the Commissioner of DYS at the time of the closing of the Florence school and the opening of Birchwood High School, and therefore cannot speak of his personal knowledge. As Commissioner, however, Mr. Davis

can certainly examine the records and show that Birchwood's opening coincided with the closing of the Florence school, and that Mr. Fouché was appointed as the first principal of Birchwood.

*ment,* not disparate impact. A claim of business necessity or the availability of a less restrictive alternative is irrelevant to a claim of disparate treatment. Furthermore, although plaintiff makes the broad statement that he felt there were "other ways of managing this situation" (Deposition at 19), he has made no proffer of an alternative method of avoiding the loss of federal funds.[5] The plaintiff's claim of a less discriminatory option simply has no merit.

Finally, plaintiff has attempted to show that the proffered reason for the merger, the loss of federal funds, was pretextural in that the defendant had proposed the merger at least six months prior to the actual merger. In support of this claim of pretext, plaintiff has submitted a memorandum, written by him on May 28, 1982, inquiring into the proposed merger of the R & E School and Willow Lane. The court fails to understand how this memorandum is probative of pretext. The requirement of certifying that a school in a correctional institution has an average stay exceeding thirty days is a long-standing one; indeed, in each yearly application for federal funds, the state must certify that it meets the requirements of Title I of the Elementary and Secondary Education Act of 1965, including the average thirty day attendance requirement. 34 C.F.R. §§ 203.2, 203.12 (1984). Thus, the proposed plan of merger considered in May merely indicates the foresight of Commissioner Davis of the apparent problem in certifying the length of the average R & E School attendance. Commissioner Davis knew of the certification requirement and recognized the inability of the R & E School to certify that the length of average attendance exceeded

thirty days. Thus, the proffered memorandum does not indicate any evidence of pretext.

For the foregoing reasons, it is apparent that plaintiff has presented no factual matters which would justify the denial of summary judgment in this case. Plaintiff can prove that he is black and that he suffered adverse personnel action at the hands of the defendant. The plaintiff has no facts to support his contention, however, that the adverse personnel action was taken as a result of his race. Summary judgment is thus appropriate, and the court hereby accepts the report and recommendation of the magistrate and the same is incorporated herein by specific reference.

IT IS THEREFORE ORDERED that summary judgment be, and the same hereby is, granted in favor of the defendant. Rule 56, Federal Rules of Civil Procedure.

## MAGISTRATE'S REPORT

### April 25, 1985.

WILLIAM M. CATOE, Jr., United States Magistrate.

The plaintiff brings this action seeking relief pursuant to Title 42, United States Code, Section 2000e for alleged racial discriminatory employment practices of the defendant.[1]

By order of the District Court filed July 1, 1982, this magistrate is authorized to review all pretrial matters in employment discrimination cases and make findings and recommendations to the District Court.

The plaintiff is a black male teacher and assistant principal employed by the defendant at Willow Lane Junior High School

---

5. In Commissioner Davis' deposition, plaintiff's counsel infers that the loss of funds could have been rectified by merging Willow Lane into the R & E School. This option, however, was patently not feasible, since Willow Lane separated as a long term juvenile instructional facility. By contrast, the R & E School operated to educate those juveniles sent to the R & E Center for evaluation. By state law, the R & E Center must evaluate those juveniles and proceed to immediately place them in the proper juvenile community. A juvenile cannot remain at the R & E Center for a period exceeding forty-five

days. S.C.Code Ann. § 20–7–2170 (Law.Co-op. 1976). Thus under state law, the R & E School *could not* perform the long term juvenile educational function that Willow Lane performed, and thus Willow Lane could not have been merged into the R & E School.

1. By order of the Honorable Clyde H. Hamilton, United States District Judge, filed January 9, 1985, the plaintiff's claims under 42 U.S.C. § 1981 and § 1983 were dismissed and a specific prayer for monetary relief was stricken.

Annex. He has been employed by the defendant as a teacher for thirteen years and a principal or assistant principal for the last seven of those thirteen years.

In December 1982, the defendant reorganized its Education Division, which resulted in the merger of the Reception and Evaluation School with Willow Lane Junior High School. At that time, the plaintiff was principal of Reception and Evaluation; however, he was not named principal of the new merged school. Instead, the white male principal of Willow Lane was designated principal of the merged school and the plaintiff was made assistant principal of the renamed annex.

In his complaint, the plaintiff alleges that he was denied the position of principal of the merged school on the basis of his race. At the plaintiff's deposition, the defendant's counsel ascertained that the plaintiff also contends that the merger of the two schools was part of an overall scheme to get rid of him.

The defendant filed a motion for summary judgment on February 6, 1985. In support of the motion, the defendant submitted the deposition of the plaintiff, portions of the deposition of Harry W. Davis, Jr., Commissioner of the Department, and an affidavit from Mr. Davis. The plaintiff has not responded to the motion.

The defendant argues that the plaintiff cannot sustain his burden of proving a prima facie case of racial discrimination as relates to his claim that the defendant failed to appoint him to the position of principal of Willow Lane in December 1982 because of his race. In employment discrimination actions, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The elements of proof required to establish such a prima facie case are:

    (1) that he belongs to a racial minority;

    (2) that he applied and was qualified for an available position; and

    (3) that he was rejected under circumstances which give rise to an inference of unlawful discrimination.

The defendant specifically argues that the plaintiff cannot sustain his burden because there was not an open position for principal of Willow Lane Junior High School.

According to Mr. Davis, there was never a choice between the plaintiff and Mr. Fouché, the white principal of Willow Lane, as to who would be principal of the merged school: "The fact is that Mr. Gilyard's position was eliminated" (Davis deposition, p. 25). The plaintiff admits that technically his job was eliminated and the position of principal of the new school was never open; however, he feels that the position should have been opened and each principal given an opportunity to compete for it (Gilyard deposition, p. 16). Essentially, the plaintiff's claim is that the fact that he is black and that he was the only one adversely affected by the consolidation implies that the decisions regarding the exact changes resulting from the merger were racially inspired (Gilyard deposition, pp. 16, 25–26).

From the deposition of Mr. Davis, it is clear that the decision to merge the two schools was specifically necessitated by the impending loss of approximately $73,000 in federal funding (Davis deposition, p. 25). As to the details of the merger, he explained that the Reception and Evaluation School was merged into Willow Lane and the plaintiff's position eliminated because it was the high turnover rate at Reception and Evaluation that placed the funds in jeopardy (Davis deposition, p. 26).

The plaintiff acknowledges that Mr. Davis gave him the federal funding explanation as to why his position was eliminated, but he feels that the situation would not have occurred as it did if he were white (Gilyard deposition, pp. 16, 19). When asked if he had any evidence of a situation where a white person employed by the defendant and situated in circumstances similar to his was treated differently, the plaintiff recalled that when the school in Florence, of which Mr. Fouché was then principal, was closed and moved to Colum-

bia, no principal lost his position (Gilyard deposition, p. 17).

In his affidavit, Mr. Davis explained the situation which occurred when the Florence school closed. It appears that the closing of the Florence school coincided with the merging of the John G. Richards School with the new Birchwood High School. Mr. Fouché was named principal of the new Birchwood High, and Mr. Gene Cantrell, who was to soon succeed the Superintendent of Education and had been serving as principal of the old Richards School, was named supervisor of instruction pending the retirement of the incumbent superintendent.

The plaintiff admits that he has never been informed by anyone that he did not get the job as the principal of Willow Lane because of his race (Gilyard deposition, p. 15). He further admits that no one even hinted to him that the reason the position was not opened up was because he is black (Gilyard deposition, p. 38). Finally, the plaintiff admitted that he had no facts or evidence to support his beliefs at that time (Gilyard deposition, p. 78).

The plaintiff obviously has not developed any evidence to support his claims in view of the fact that he has chosen not to oppose the motion for summary judgment. Thus, the facts stand undisputed. The plaintiff's position as principal of the Reception and Evaluation School was eliminated due to a merging of the school with Willow Lane High School and the position of principal of the merged school was never open. The merger was necessitated by the possible loss of substantial federal funding. The mere fact that the only person adversely affected by the merger was black is not sufficient evidence to support a prima facie case. Also, the incident with the Florence school closing and transfer of Mr. Fouché does not give rise to any inference of racial motivation in the recent situation.

Based on the foregoing, it is recommended that the defendant's motion for summary judgment be granted and judgment be entered for the defendant.

## ON MOTION FOR ATTORNEY'S FEES

HAMILTON, District Judge.

This matter is before the court on defendant's motion for attorney's fees. The plaintiff filed this suit on May 4, 1984, alleging racial discrimination in employment. The plaintiff claimed violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1971, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* On January 9, 1985, this court issued an order dismissing the claims under 42 U.S.C. §§ 1981 and 1983, on the ground that the eleventh amendment bars the assertion of claims under §§ 1981 or 1983 against a state. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Coffin v. South Carolina Department of Social Services,* 562 F.Supp. 579 (D.S.C.1983). Ultimately, on June 20, 1985, this court granted the defendant's motion for summary judgment on the remaining Title VII claim. Fed.R.Civ.Proc. 56. The defendant now seeks attorney's fees for defending this action, pursuant to 42 U.S.C. §§ 1988 and 2000e–5(k).

Title 42, section 1988 allows a district court, in its discretion, to award reasonable attorney's fees to the prevailing party in actions under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1971, 42 U.S.C. § 1983. Title 42, section 2000e–5(k) allows the court to award reasonable attorney's fees to the prevailing party in actions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) the Supreme Court established criteria for awarding attorney's fees under § 2000e–5(k) to prevailing defendants. The Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700. While the Court noted that some of the strong equitable considerations coun-

seling attorney's fee awards to plaintiffs are absent in the case of prevailing defendants,[1] nevertheless, in enacting the statute Congress wanted to protect defendants from "burdensome litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 700. The Court identified this policy of protecting defendants from burdensome litigation as having the same importance as the congressional goal of encouraging plaintiffs to challenge invidious employment practices. *Id.,* 98 S.Ct. at 700. *See also Arnold v. Burger King Corp.,* 719 F.2d 63, 68 n. 6 (4th Cir.1983); *Grubbs v. Butz,* 548 F.2d 973, 975 (D.C.Cir.1976). Although the Court warned district courts not to engage in a post hoc reasoning that assumes that, because a plaintiff ultimately lost, his action must have been unreasonable, *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. at 700, the Court directed that a plaintiff could be assessed his opponent's attorney's fees if the action was frivolous, unreasonable or groundless, or if it continued to be litigated after it clearly became so. *Id.* at 422, 98 S.Ct. at 701.[2]

Standards for awarding attorney's fees under the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988 and the corresponding Title VII provision, 42 U.S.C. § 2000e–5(k) are identical. *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). *See also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 758 n. 5, 100 S.Ct. 2455, 2460 n. 5, 65 L.Ed.2d 488 (1980). Thus, in reviewing the merits of the plaintiff's §§ 1981 and 1983 claims, as well as the Title VII claim, this court is guided primarily by the standards set forth in *Christiansburg.*

Divergent factors have supported the finding of frivolousness and the award of attorney's fees. *See, e.g., Durrett v. Jen-*

*kins Brickyard, Inc.,* 678 F.2d 911 (11th Cir.1982) (knowingly joining wrong defendant justifies fees); *Harris v. Plastics Manufacturing Co.,* 617 F.2d 438 (5th Cir.1980) (no evidence produced to support claim of racial discrimination); *Brown v. Fairleigh Dickinson University,* 560 F.Supp. 391 (D.N.J.1983) (no evidence produced at trial). The Fourth Circuit Court of Appeals, in *Arnold v. Burger King Corp.,* 719 F.2d 63 (4th Cir.1983) recognized that *Christiansburg* provided only general guidelines, and made no attempt to quantify the evidence an unsuccessful plaintiff must produce to avoid an award of attorney's fees to the defendant. *Id.* at 65. The Fourth Circuit therefore firmly committed the merits determination to the sound discretion of the trial court. "The fixing of attorney's fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of legal action." *Id. See also Mastrippolito v. Joseph,* 692 F.2d 1384, 1387 (3d Cir.1982) (presiding judge is "particularly well qualified to make the findings necessary for an attorney's fee award, and to perform the balancing of equities inherent in such an award").

In determining whether the plaintiff's claim of racial discrimination falls squarely within the *Christiansburg* standard, this court has separately examined the legal and factual bases supporting the plaintiffs §§ 1981, 1983 and Title VII claims. In the present action the plaintiff, a black and a former principal at the Reception and Evaluation Center School (hereinafter the "R & E School") contended that after the R & E School was merged with Willow Lane Junior High School (hereinafter "Willow Lane") he was denied the position of principal of the merged school on account of his

---

1. The Court isolated two policies underlying fee awards to prevailing plaintiffs: (1) that the plaintiff is the chosen instrument of Congress to vindicate anti-discrimination goals, and (2) that when a district court awards fees to a prevailing plaintiff, it is awarding them against a violator of federal law. *Christiansburg,* 434 U.S. at 418, 98 S.Ct. at 699 (quoting *EEOC v. Christiansburg Garment Co.,* 550 F.2d 949, 951 (4th Cir.1977)).

2. Cases construing this standard have concluded that frivolity must be determined "against the facts present at the time the suit was filed, or throughout its proceeding to judgment." *Davis v. Braniff Airways, Inc.,* 468 F.Supp. 10, 13 (N.D. Tex.1979).

race. The plaintiff also alleged that the merger was motivated by the racially discriminatory purpose of ousting him. The plaintiff named as defendant the South Carolina Department of Youth Services (hereinafter "DYS"), a state agency responsible for the case of juvenile offenders. S.C. Code Ann. § 20-7-3210 (Law.Co-op. 1976). DYS has the responsibility to provide training at the R & E School, Willow Lane and Birchwood High School. *Id.* § 20-7-3240. Commitment to the R & E School may not exceed forty-five days. Id. § 20-7-2170. The plaintiff had served as principal at the R & E School for six years, prior to its merger with Willow Lane in December of 1982. The reason given for the merger was the necessity to maintain an average stay of thirty days at the facility in order to obtain federal funds.[3] After the merger the R & E School became an annex of Willow Lane, and the existing principal of Willow Lane continued in that capacity. Plaintiff, however, was appointed assistant principal of Willow Lane.

■ With respect to the plaintiff's claims brought under §§ 1981 and 1983 this court must determine whether these actions can be deemed frivolous within the meaning of *Christiansburg.* Courts applying the *Christiansburg* standard have concluded that a claim is frivolous if there is no evidence to support the plaintiff's claim, or if he has no colorable legal theory. *Kaimowitz v. Howard,* 547 F.Supp. 1345, 1350 (E.D.Mich.1982). For example, in *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir.1981), the plaintiff attempted to obtain federal court jurisdiction over a probate matter by framing his claim under § 1983. The Sixth Circuit found the action "contrived, frivolous, unreasonable, and without foundation," *Tonti,* 656 F.2d at 216, and affirmed the award of attorneys fees. Similarly, in *Woods v. State of New York,* 494 F.Supp. 201 (D.C.N.Y.1980) the district court awarded attorney's fees to a prevailing defendant after determining that the plaintiff's § 1983 claim, which alleged discrimi-

nation arising out of an unsatisfactory job rating, had no colorable legal basis.

■ In dismissing this plaintiff's §§ 1981 and 1983 claims, this court concluded that the eleventh amendment posed an absolute bar to plaintiff's claims. The Supreme Court has consistently construed the eleventh amendment to bar suits brought against a state by its own citizens. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It is well settled that this immunity extends to state agencies such as DYS. *Pennhurst,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67; *Coffin v. South Carolina Department of Social Services,* 562 F.Supp. 579 (D.S.C.1983). It is equally clear that neither the state, in establishing DYS, *see* S.C.Code Ann. § 20-7-3100 to -3340 (Cum. Supp.1983), nor Congress, in enacting §§ 1981 or 1983, altered this rule. *See Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981) (no abrogation of state immunity for claims under § 1981); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, in light of the foregoing authorities, this court is hard pressed to divine upon what "colorable legal basis" the plaintiff's claims were premised. The plaintiff here, like the plaintiffs in *Tonti* and *Woods,* has simply attempted to couch his complaint in as broad terms as possible. "Plaintiffs in civil rights cases cannot with impunity make shotgun charges, unless there is some minimal basis for the claim." *Kaimowitz,* 547 F.Supp. at 1351. Accordingly, this court finds that the plaintiff's §§ 1981 and 1983 claims were so legally baseless as to rise to the level of frivolity required by *Christiansburg,* and attorney's fees shall be awarded for hours spent defending those claims.

■ With respect to the plaintiff's Title VII claim, this court has also reexamined the record to determine if the plaintiff had some factual basis for the claim. As to the plaintiff's first allegation, i.e., that

---

3. 34 C.F.R. § 203.2 (1984). Defendant claimed that by the fall of 1982 the average stay of a student at the R & E School had declined to 28 days, and by merging the R & E School into the larger Willow Lane School, the average length of stay would exceed the 30 days requirement.

the defendant discriminated against him in failing to hire him as principal of the merged schools, the plaintiff failed to make out the prima facie case of discrimination under the test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court concluded that because plaintiff's position had been *eliminated* by the merger, the plaintiff could not satisfy the second element of the *McDonnell Douglas* test, which requires a showing of a vacant position.[4]

The plaintiff also failed to establish a factual basis for his claim that the merger itself was undertaken to oust him from the position of principal on account of his race. At deposition, the plaintiff conceded that he knew of no facts to support such a belief. Plaintiff's Deposition at 35, 78. He acknowledged that no one had told him that the merger was devised to oust him. *Id.* at 34–35, 77–78. Plaintiff's suspicions rested merely on the fact that he was the only person negatively affected by the merger and the fact that he was black. The plaintiff's belief that he was the victim of discrimination, unsupported by any competent evidence, failed to establish any causal relationship between his race and the merger of the two schools. *See Mason v. Continental Illinois National Bank,* 704 F.2d 361, 364 (7th Cir.1983) (plaintiff's sincere belief in discrimination insufficient to make out prima facie case if unsupported by any evidence.) In short, the plaintiff here offered no proof, besides his own speculation, in support of his claim of racial discrimination.

Cases interpreting *Christiansburg* have concluded that where no evidence is produced at trial to substantiate discrimination claims, the claim is frivolous and attorney's fee awards to the defendant may be granted. *Brown v. Fairleigh Dickinson University,* 560 F.Supp. 391, 405 (D.N.J.1983). *See also Harris v. Plastics Manufacturing Co.,* 617 F.2d 438 (5th Cir.1980) ("no evidence" adduced); *Hill v. BASF Wyandotte Corp.,* 547 F.Supp. 348, (E.D.Mich.1982)

("no proof"); *Spence v. Eastern Airlines, Inc.,* 547 F.Supp. 204 (S.D.N.Y.1982) (claim "devoid of any evidential support at trial"); *Hughes v. Defender Association of Philadelphia,* 509 F.Supp. 140 (E.D.Pa.1981) ("no evidence"); *Dailey v. District 65, UAW,* 505 F.Supp. 1109 (S.D.N.Y.1981) ("not a scintilla of evidence"). In contrast to the disposition taken in the above-cited cases, all of which went to trial, the plaintiff's case failed to survive even a summary judgment motion. This factor is persuasive support for this court's conclusion that plaintiff's claim was without foundation.

In *Whiten v. Ryder Truck Lines,* 520 F.Supp. 1174 (M.D.La.1981), a case with a procedural disposition identical to this case, the plaintiff brought his racial discrimination suit under various civil rights statutes, including §§ 1981, 1983 and Title VII. All claims except for the Title VII action were dismissed pursuant to a Fed.R.Civ.Proc. 12(b)(6) motion, and summary judgment was later granted on the Title VII claim. The court concluded that the claims were frivolous, and continued to be litigated even after discovery and court rulings revealed that the allegations were groundless. In the instant case, the plaintiff, by deposing the Commissioner of DYS, Mr. Davis, had ample opportunity to explore the basis underlying the merger of the schools. In fact, plaintiff acknowledged that as long as six months before the merger Mr. Davis had publicly proposed the merger, and that he had consistently given the federal funds requirement as the reason prompting the merger. Yet, despite a total absence of any evidence supporting his claim of an invidious basis for the merger, the plaintiff continued to litigate his suit.

The plaintiff cannot escape responsibility by protesting his good faith, or that these were the legal decisions of counsel. "A firmly held belief in injustice by people who receive unfavorable employment actions, unsupported by any reasonable basis for

---

**4.** This court determined that upon the merger of two schools, no duty arises to open remaining positions to competition, unless the merger is

pursuant to desegregation. *See Lee v. Tuscaloosa County Bd. of Educ.,* 591 F.2d 324 (5th Cir. 1979).

believing that there was unlawful discrimination, is not enough to insulate party and counsel from responsibility to the opposing party and system for pursuing meritless litigation." *Davidson v. Allis-Chalmers Corp.*, 567 F.Supp. 1532, 1539 n. 2 (W.D. Mo.1983). Further, for purposes of §§ 1988 and 2000e–5(k), a party is considered responsible for the conduct of counsel such as framing of claims, and attorney's fees, if awarded, are assessed against plaintiff, rather than his counsel. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 915 (11th Cir.1982); *Prate v. Freedman*, 583 F.2d 42, 48 (2d Cir.1978). Here there is no evidence that the plaintiff took less than an active role in pursuing this litigation. Accordingly, this court deems the plaintiff responsible for pursuing this claim.

This court recognizes the caution with which a defendant should be awarded attorney's fees in a civil rights case, because of the danger of discouraging persons with valid claims from pursuing them. However, in view of the frivolity, unreasonableness and lack of foundation that mark this case, and after reviewing the cited authorities, the court is constrained to conclude that this is one of those vexatious [5] suits in which a Title VII defendant is entitled to fees. Accordingly, the defendant is entitled to an award of reasonable attorney's fees.

The starting point for determining an appropriate award of attorney's fees is found by multiplying the number of hours reasonably expended on the case by the reasonable or customary hourly rate. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978). The district court then has discretion to adjust this figure up or down in light of certain factors as follows: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 n. 4 (4th Cir.1983). *See also Allen v. Burke*, 690 F.2d 376, 379 (4th Cir.1982). Additionally, where the district court is awarding attorney's fees to a defendant, the court should consider the plaintiff's financial condition, the plaintiff's motive in bringing the lawsuit and the frivolousness of the lawsuit. *Arnold*, 719 F.2d at 68.

There is insufficient evidence in the record upon which to base an attorney's fee award. In order to clearly ascertain the financial position of the litigants, the court will conduct a hearing solely to hear evidence on the question of attorney's fees. The plaintiff will have an opportunity to present evidence of his financial condition, and to cross-examine defendant's counsel on any of the *Arnold* factors.

IT IS THEREFORE ORDERED that the parties shall appear before me on the 1st day of October, 1985, at 10:00 a.m., in Courtroom No. 4, United States District Court, Corner of Assembly and Richland Streets, Columbia, South Carolina. Plaintiff Willie Gilyard is ordered to appear and bring with him any documents, materials or other records showing any monies or funds received by plaintiff, including, but not limited to, any type of document or writing showing or otherwise indicating plaintiff's salary or wages (including commissions, tips, bonuses and overtime pay); pension or retirement benefits; Social Security benefits, disability or unemployment insurance; public assistance benefits; child/spousal support from a previous marriage, dividends or interest; rents; or any other in-

---

**5.** In *Christiansburg* the Supreme Court made clear that "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. 434 U.S. at 421, 98 S.Ct. at 700.

come plaintiff receives on a regular basis. Plaintiff shall also bring with him any records or documents showing or otherwise indicating any assets plaintiff might have, including but not limited to (1) cash on hand; (2) money in checking accounts, savings accounts, credit unions or other accounts or deposits; (3) vested retirement or pension funds; (4) the cash value of any life insurance policies; (5) the value of any stock, bonds or profit sharing plans in which plaintiff has an interest; (6) the value of any real estate in which plaintiff has an interest; and (7) the value of any personal property (household items, automobiles, jewelry, clothing, furniture, appliances, etc.) in which plaintiff has an interest. Plaintiff is further directed to bring with him any documents or other writings showing or otherwise indicating his expenses or liabilities including but not limited to (1) deductions from his salary or wages for federal or state income taxes, social security taxes, union or other dues, insurance, retirement or pension fund and savings plan; (2) mortgage payments; (3) real and personal property insurance; (4) expenses for maintenance of residence, food and household supplies, utilities, telephone, laundry and cleaning, clothing, medical, dental, insurance, child care, payment of child/spousal support for prior marriage, school, entertainment, incidentals and, auto expenses (insurance, gas, oil, repair); (5) auto payments; and (6) any other credit or installment payments. Counsel for the defendant is to prepare an affidavit comporting with the requirements of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978) and *Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir.1983).

Based on the foregoing findings and cited authorities, plaintiff's motion to strike and/or dismiss defendant's motion for attorney's fees is denied.