**Franklin GLOVER, Plaintiff,**

**v.**

**LOCKHEED CORPORATION, d/b/a Lockheed Aeronautical Systems Company, Defendant.**

**Civ. A. No. 2:90–1212–18.**

United States District Court, D. South Carolina, Charleston Division.

July 16, 1991.

Synthia R. Glover, Charleston, S.C., for plaintiff.

David B. McCormack, Charleston, S.C., for defendant.

## ORDER

NORTON, District Judge.

This matter is before the Court for review of the plaintiff's objections to the Report and Recommendation of the Magistrate Judge. For reasons discussed more fully below, this Court adopts the Magistrate Judge's recommendation that summary judgment be granted in favor of the defendant as to all causes of action.

## FACTUAL BACKGROUND

The plaintiff Franklin Glover went to work for defendant Lockheed Corporation ("Lockheed") in October of 1963. Through a series of promotions, Glover eventually attained a salaried position as "Structures and/or Installation Supervisor." Glover's promotion roughly coincided with Lockheed receiving a contract with the United States Air Force for the construction of fifty C–5B airplanes. This contract was completed sometime in mid–1987, and was not replaced by any new contract of the same magnitude. As a result, Lockheed made plans to "surplus" employees. "Surplus" is a Lockheed term which describes the procedure at Lockheed of demoting and terminating certain employees when business downturns so necessitate.

As a result of the 1988 surplus, Glover was demoted to an hourly position in bond assemblies production, which paid $13.57 per hour. This constituted a loss in income to him of $139.00 per week in gross pay. Glover's former supervisor, a white male named Wendell Richardson, was surplussed also, and demoted to Glover's former position as supervisor. Of course, Glover and Richardson were not the only persons affected by the surplus. The plant's original work force of approximately 627 employees dropped to 134 employees. The total number of supervisors dropped from 21 to 7. Of these original 21 supervisors, 15 were white, and 6 were black. After the surplus, 5 of the supervisors were white, and 2 were black.

Glover complains that he was discriminated against because he was replaced by a white male and because the company failed to give adequate weight to his seniority in making its decision to demote him. Lockheed contends that Glover was treated fairly and that Richardson was more qualified than Glover for the position. In support of this claim, Lockheed submitted that Glover's most recent evaluation just prior to his demotion indicated a 50.7 rating out of a possible 100, as compared to Richardson, whose rating was 81.6. Lockheed further contends that it followed its established race neutral procedure for determining who was demoted and into which position. Lockheed further cites to its review process which calls for a special committee to review any adverse decisions affecting a minority employee.

Glover submitted the affidavits of several of his co-employees who opined that Glover was more qualified than Richardson and that they felt Glover had suffered an adverse employment action because he was an outspoken employee, especially on issues of racial equality. As a result of his demotion, Glover filed a complaint alleging violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 1981[1], and state law claims of intentional infliction of emotional distress and "detrimental reliance." Defendant Lockheed moved for summary

---

**1.** The plaintiff withdrew his § 1981 claim when he appeared before the Magistrate Judge.

judgment on all claims. The matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and the local rules of this district concerning reference to a magistrate judge. *See United States Magistrates*, Local Rule 19, D.S.C.; *Bowman v. Bodenkircher*, 522 F.2d 209 (4th Cir.1975). The Magistrate Judge filed his Report and Recommendation on May 30, 1991. On June 13, 1991, the plaintiff filed his objections to the Magistrate Judge's Report and Recommendation.[2]

When a party properly objects to a magistrate judge's report and recommendation, this Court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objections are made, and the Court may accept, reject, modify in all or in part, the recommendation, or recommit the matter to him with instructions. 28 U.S.C. § 636(b). The plaintiff did not object to the Magistrate Judge's recommendation that his state claims be dismissed; therefore this Court need not review those claims.[3] This Court need only address plaintiff's objections with regard to his Title VII claim, which are that (1) "Lockheed's criteria for surplussing the plaintiff were subjective and not validated as related to job performance;" (2) "that plaintiff's memorandum in opposition to the Motion for Summary Judgment and exhibits raise an inference of discriminatory animus which was not adequately rebutted by the defendant;" and (3) "that defendant's attempt to establish a legitimate business necessity for the surplus criteria which has not been shown to be job-related does not meet the required burden under *Texas Department of Com-*

*munity Affairs v. Burdine*, 450 U.S. 248 [101 S.Ct. 1089, 67 L.Ed.2d 207] (1981)." Since the plaintiff's objections are somewhat difficult to follow, this Court has reviewed plaintiff's entire Title VII claim *de novo*, based on the evidence of record as well as the above mentioned facts.

## SUMMARY JUDGMENT STANDARD

In deciding a summary judgment motion, this Court must determine whether there exists a genuine issue of material fact. Fed.R.Civ.P. 56. A party seeking summary judgment bears the burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) citing Fed.R.Civ.P. 56(c). Although the burden is on the party seeking summary judgment, the non-moving party nonetheless must point to specific facts showing that there is a genuine issue for trial, rather than resting on the assertion of his pleadings. Fed.R.Civ.P. 56(e).

If the nonmoving party fails to make a showing sufficient to establish the existence of an element of his case and on which he will bear the ultimate burden of proof at trial, there can be no genuine issue of material fact, since a failure of proof concerning an essential element of the case renders all other facts immaterial. *Celo-*

---

**2.** Defendant Lockheed contends that plaintiff's objections were not filed within the required ten day period. Defendant's attention is directed to Fed.R.Civ.P. 6(a) which sets forth the guidelines for computing time under each of the other rules, with certain exceptions which are not applicable in this case. Fed.R.Civ.P. 6(a) provides that any time period which consists of ten days or less is computed by excluding weekends. It further provides that, when computing any period of time prescribed under the rules, the day on which the item in question was filed or served is excluded. Therefore, it appears that the objections were timely, since excluding May 30, 1991 as the date of filing, and excluding four days for the two interim weekends, plain-

tiff had until at least June 13, 1991 to file his objections. Additionally, this Court notes that although the Report and Recommendation was filed on May 30, 1991, it most probably would not have been received by the plaintiff on the same date, and that he may have actually been entitled to another additional day or two. Therefore, Lockheed's procedural complaint in this regard is without merit.

**3.** A cursory review of the Report and Recommendation on those claims indicates that the conclusion of the Magistrate Judge on each of those claims is in accord with existing law.

*tex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. "The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex* at 323, 106 S.Ct. at 2552, citing Fed.R.Civ.P. 56.

## DISCUSSION

In *McDonnell–Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1982), the Supreme Court set forth the framework within which a plaintiff must establish a Title VII claim. Under these cases, the plaintiff must first establish *prima facie* case of discrimination. Once he has made out a *prima facie* case, the defendant must then come forward with a legitimate, nondiscriminatory reason for the action it took. If the defendant articulates such a reason, the plaintiff must then prove, by a preponderance of the evidence that the reason was not the defendant's true reason, but was instead a pretext for discrimination.

This case is analogous to a reduction in force case. In order to establish *prima facie* discrimination in a reduction in force case, a plaintiff must show that (1) he was in the protected class; and (2) that he suffered an unfavorable employment action at the hands of his employer; (3) that he was qualified to assume another position at the time of his discharge or demotion; and (4) that the employer has not treated race neutrally, but instead has discriminated based upon it. *Gilyard v. South Carolina Department of Youth Services,* 667 F.Supp. 266 (D.S.C.1985).

■ In this case, the plaintiff has established that he is a member of a protected class and that he suffered an adverse employment action. However, his *prima facie* case fails as to the third and fourth elements. First, with regard to his qualifications, he has failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was more qualified than Richardson, the white male who was demoted into plaintiff's position. Second, he has failed to produce direct evidence that Lockheed did not treat his race neutrally in deciding to demote him. Although the plaintiff produced affidavits of persons who opined that he had been discriminated against because he was an outspoken employee, this, coupled only with the plaintiff's own subjective opinion, is not sufficient to create an issue as to whether his race was treated neutrally in the decision regarding him.

After adequate time for discovery a party who fails to make a showing sufficient to establish the existence of an element essential to his or her case, and for which he has the burden of proof at trial, cannot withstand a properly supported summary judgment motion by relying on mere allegations or denials in his pleadings. *Felty v. Graves–Humphreys,* 818 F.2d 1126, 1128 (4th Cir.1987). Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538. Even assuming that the plaintiff has managed to make out a *prima facie* case, such that the burden shifts to Lockheed to articulate a neutral reason for his discharge, the plaintiff's proof fails with regard to establishing that the articulated reason is a pretext. The reason articulated by Lockheed for its treatment of the plaintiff is simply that it was faced with the completion of a major contract, which was not replaced, necessitating a major reduction in force. Its further reason for demoting Glover and then putting Richardson into Glover's former spot was that Richardson was more qualified, having scored higher on his evaluation than Glover. The plaintiff has failed to provide evidence sufficient to withstand defendant's summary judgment motion because he has not rebutted this neutral, nonracial reason. In fact, plaintiff's primary contention with regard to the selection of Mr. Richardson over him is that Richardson was a less senior employee.

However, when asked whether two other black men who had more seniority than Richardson should have been put in the position ahead of Richardson also, Glover admitted that whether it had been Richardson or either of those two black gentlemen, his complaint would have been that as the person with seniority, he should have been first in line for consideration for the position. [Glover deposition, pp. 48–49].

Clearly, Mr. Glover's complaint sounds more in unfair employment treatment than in racially discriminatory treatment. Although he complains that he was replaced by a white male with less seniority, he fails to recognize that this same white male had previously been *his* supervisor. He also fails to recognize that Mr. Richardson received a substantially higher score on the ratings evaluation than he did. Mr. Glover has simply failed to create an issue of material fact because he has failed to show that he was either as qualified or more qualified than the person who eventually received the position.

Plaintiff criticizes the Lockheed ratings method as unfair, or as having been discriminatorily applied to him. However, he has failed to point to any specific feature of the system which functions deficiently. Further, although he mentioned in his deposition that he believed his results to have been tampered with, when questioned further, he made no attempt to further explain or substantiate this assertion.

In sum, plaintiff simply has no case. This was an unfortunate situation for both Mr. Glover and Lockheed, which had to surplus in excess of four hundred employees. In doing so, it followed established procedures for determining who stayed, who left, and who was transferred or demoted. That procedure did not place a great emphasis on seniority. Although this might appear to be an unfair decision, it is a business decision which does not violate the provisions of Title VII. Title VII protects against the discrimination by an employer against a person based on his race, age or sex. It does not protect against an employer whose policies might seem unjust or shrewd from a business sense. Although the plaintiff may feel he was treated unfairly, he has not shown that he was discriminated against, and therefore has failed to make out a Title VII claim. For these reasons, this Court adopts the Report and Recommendation of the Magistrate Judge, and orders that summary judgment in favor of the defendant be granted as to all causes of action.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

ROBERT S. CARR, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge for a report with recommendations on the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. 28 U.S.C. § 636(b).

Franklin Glover (Glover) filed this employment discrimination suit on June 4, 1990, alleging violations of 42 U.S.C. § 1981, Title VII of the 1964 Civil Rights Act, and state law claims of intentional infliction of emotional distress and "detrimental reliance".[1] Discovery on the issues pertinent to the defendant's summary judgment motion has been completed and oral arguments on the motion have been held. Hence, it appears this matter is ready for consideration.

Glover is a black male who began employment at defendant Lockheed Corporation (Lockheed) in October, 1963, at the Charleston, South Carolina facility and rose to the position of structures and/or installation supervisor, a salaried position. In September, 1988, he was demoted to a bonded assemblies production worker paid at the rate of $13.57 per hour, resulting in a weekly loss of $139.00 in gross earnings. He alleges the decision to demote him was based upon racial discrimination.

## I. FACTS

The following facts are reasonably undisputed. Lockheed has facilities in five

---

1. He subsequently withdrew his § 1981 cause of action.

states including South Carolina. Its primary manufacturing facility is in Marietta, Georgia, manufacturing military aircraft for governments. The plants outside of Georgia are known as "feeder plants" and provide sub-assemblies for aircraft being manufactured in the primary manufacturing facility in Georgia.

The United States Air Force had contracted to purchase 50 C–5 B aircraft from the defendant. Lockheed manufactured these aircraft, and by mid–1987 the Georgia facility began to phase down the production of C–5 B aircraft when no more orders were forthcoming from the United States Air Force. From mid–1987 through mid–1989, Lockheed displaced over 10,000 employees company-wide, including a reduction in the Charleston facility where Glover works by greater than 70% of its total 627 employee work force.

As a result of the reduction-in-force,[2] Glover was surplussed downward in September, 1988, from his salaried supervisor's position, and his former supervisor, W.D. Richardson, a white male, was surplussed downward from assistant department manager to Glover's former job. The pattern followed to surplus the structure and/or installation supervisors was as follows: April, 1988—1 white, the following month 1 white and 2 blacks, in June 3 whites and 1 black, in July 2 whites, the following month 3 whites, and finally, in September, 1988, 1 white and 1 black (Glover). The net effect of these surplus actions were to reduce the 21 supervisors to 7 supervisors of which originally 15 were white and 6 were black, and of the remaining supervisors 5 were white and 2 were black.

Lockheed asserts that the decision to surplus a particular individual was not racially motivated and was made pursuant to an established company policy and procedure. Section 5 of Lockheed's management directive number J–21 which was in effect at the time Glover was surplussed details the particular procedure to be followed and establishes the evaluation and ranking sys-

tem that was to be utilized to make individual surplus determinations:

> Periodic evaluation and ranking of each salaried employee will be conducted utilizing the employee evaluation (GA Form 6157) and the accompanying ranking record-salaried employees (GA Form 6158). In the event of a surplus condition, this evaluation and ranking system will be utilized to aid in the process of identifying those employees to be surplussed. The final decision will be the responsibility of the appropriate salaried selection committee.

This directive was followed in making the decision to surplus the plaintiff. Company ranking records and an employee evaluation form which included Glover's evaluation have been submitted to the court. (See Affidavits of Powell and Simpson).

Glover's employee evaluation of July, 1987, scored him at 56.2 out of 100, rated various factors of job performance. These included, among other things, versatility, the ability to perform higher level jobs, and seniority. Seniority could account for as much as 20% of an employee's overall grade in this evaluation.

In December, 1987 and June, 1988, Glover was again evaluated, receiving scores of 50.1 and 50.7 respectively. In those job evaluations, the seniority weight factor had decreased from a maximum of 20% to 10% of an employee's overall rating.

When a black salaried employee was selected for surplus, that decision was reviewed again by senior level management "to insure that impermissible factors were not considered and to assure that [Lockheed] is able to continue to meet its affirmative action obligations as a government contractor." (Affidavit of Terry Powell, Paragraph 9). The decision to surplus Glover was reviewed on August 8, 1988.

Also made part of the record are total ranking scores for each supervisor. They indicate that between December, 1987 and June, 1988, 8 supervisors (5 white, 3 black) with lower scores than the plaintiff were

---

**2.** Lockheed employs the term "surplussing" to indicate a layoff or demotion in order to reduce its work force.

surplussed and 3 supervisors (all white) with higher scores were surplussed. Between June and September, 1988, 2 other white supervisors were surplussed. When the plaintiff was surplussed in September, a white supervisor was surplussed at the same time. The ranking scores also indicate that the supervisors retained after Glover was surplussed each had a higher ranking than Glover. In particular, it indicates that W.D. Richardson, Glover's replacement, had the highest score of all supervisors.

The plaintiff has submitted the affidavits of various Lockheed employees and ex-employees who state that the plaintiff demonstrated superior performance and a positive attitude while his replacement did not. Further they state that, generally, the Lockheed plant suffers from rampant race discrimination. Lastly, the various affidavits indicate the affiants' belief that the plaintiff was demoted because of his race and because he was an outspoken champion of black employees.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P.

The United States Supreme Court laid out the proper standard for summary judgment in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988), in which it held:

"In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all of their facts and material. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make sufficient showing on an essential element of her case with respect to which she has the burden of proof."

106 S.Ct. at 2252.

Further, the "mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 at 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Additionally, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party ... If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Id.* 106 S.Ct. at 2511 (citations omitted). Lastly, the issue of fact must be genuine. Mere metaphysical doubt will not defeat the entry of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

## III. TITLE VII

Glover alleges that Lockheed violated § 703(a) of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2(a), which makes it unlawful to discriminate against any individual with respect to his employment because of such individual's race, color, religion, sex, or national origin. Specifically, Glover maintains that Lockheed decided to demote during the reduction-in-force instead of some other employee because of his Negro race. He thus asserts that he received disparate treatment in an adverse employment decision on the basis of his race.

For a plaintiff to prevail on a discrimination claim, he must first establish a four-part *prima facie* case:

1. That he is a member of a protected class;

2. That he was qualified for his job and his job performance was satisfactory;

3. That in spite of his qualifications and performance, he was suffered an adverse employment decision, and

4. That there is evidence the employer did not treat race neutrally.

*McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (*en banc*); *Smith v. University of North Carolina,* 632 F.2d 316, 332 (4th Cir.1980). Once this *prima facie* case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate non-discriminatory reasons for the demotion. *Smith,* 632 F.2d at 332–333. Once this showing is made, the burden of proof lies with a plaintiff to show, by a preponderance of the evidence, that the employer's proffered reasons for the demotion are pretextual. *Id.* at 333.[3]

A review of the record and relevant case law indicates that the defendant's summary judgment motion on plaintiff's Title VII claim should be granted as the plaintiff has failed to demonstrate the existence of a genuine issue of material fact, and defendant is entitled to judgment as a matter of law.

Even assuming, *arguendo,* that plaintiff has made out a *prima facie* case, the plaintiff has come forth with no evidence from which a fact finder could reasonably conclude that the reasons stated by Lockheed are pretextual and that the true reasons for Glover's demotion were unlawful racial discrimination.

Lockheed has shown without dispute that because of a business downturn it decided to "surplus the majority of the workers in the South Carolina plant." Before the surplus, there were 21 employees in Glover's position of whom 15 were white and 6 were black. After the surplus, there remained 5 white supervisors and 2 black supervisors.[4] The decision to surplus a particular individual was made pursuant to established company policy and procedure. The procedure and policy established an evaluation and ranking system that was utilized to make individual surplus determinations. Lockheed's records in the file indicate that the directive was followed in making the decision to surplus the plaintiff. Copies of Glover's last 3 employee evaluation forms dated July, 1987, December, 1987, and June, 1988, reveal the exact criteria employed to create an individual employee's "total ranking score" and the weight afforded each factor. The plaintiff's scores were 56.2, 50.1, and 50.7.[5]

The total ranking score chart in the record indicates that each of the supervisors, black or white, who were retained after Glover was surplussed had a higher total ranking score than Glover. In particular, they revealed that W.D. Richardson, the individual Glover identifies as the less qualified and experienced white who replaced him, had the highest score at 81.6 of all supervisors who were ranked. The decision to surplus the plaintiff was approved by the management selection review com-

---

**3.** The ultimate burden of persuasion in a Title VII employment discrimination case never "shifts" from the plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The shifting intermediate evidentiary burdens established by *McDonnell–Douglas* and its progeny, merely expedite the process of plaintiff's proof. *Id.*

**4.** Interestingly the percentage of supervisors who were black remained the same before and after the surplusing. That is 28.57142% of all supervisors were black.

**5.** Glover's real complaint seems to be that seniority was not accorded greater weight. He believes that he was discriminated against on the basis of race because he believes he was the most senior black supervisor and should have been retained. (In fact, Lockheed records indicate that a Mr. Simmons, a black supervisor with more seniority and a higher ranking score than Glover, was not surplussed.) Glover seems to argue that the surplussing should have been based on seniority in reverse order, or at least that the years of service to Lockheed should have weighed more heavily in Lockheed's ranking procedure. Title VII provides a remedy for adverse employment decisions based on race discrimination, not decisions which the plaintiff considers otherwise inequitable.

mittee and again reviewed and approved by a senior level management committee. These records all indicate that Glover was surplussed due to a reduction in work available at Lockheed.

The plaintiff has not come forward with facts from which a fact finder could reasonably conclude that Lockheed's reasons are pretextual and that the true reason was race discrimination. The plaintiff has merely proffered the affidavits of co-workers. The affidavit of Richard Ganaway is illustrative:

> I have worked with Frank (Glover) and have observed his work performance, promotion, and attitude, and he was always an outstanding worker and leader in the plant; that I believe Frank was demoted because of his race and because management did not like him because of his outspokenness for employees at the plant, particularly black employees; that I have seen white employees, i.e., Wendell Richardson, promoted because of favoritism.

(Affidavit of Richard Ganaway). This affidavit, like the others submitted, largely contain opinions, beliefs, conclusions, and hearsay. They fall short of the requirement that they contain specific admissible facts as required by Rule 56(e) of the Federal Rules of Civil Procedure. Specifically, not one of the affidavits contain any evidence that Lockheed failed to follow its objective company-wide surplus procedure in this case, or that Lockheed surplussed the plaintiff because he was black. Instead, the evidence is that the decision to surplus Glover was necessitated by a company-wide economic downturn and was made pursuant to established company policies concerning deselections. Therefore, the defendant's motion for summary judgment as to the Title VII claim should be granted.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to make out his claim of intentional infliction of emotional distress or outrage, the plaintiff must prove the elements of this tort as follows:

1. The defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, Restatement (2nd) of Torts, § 46, Comment 1;

2. The conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community', Restatement (2nd) of Torts, § 46, Comment d;

3. The actions of the defendant caused the plaintiff's emotional distress; and

4. The emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.' Restatement (2nd) of Torts, § 46, Comment j.

*Ford v. Hutson,* 276 S.C. 157 at 162, 276 S.E.2d 776 at 778 (1981).

■ A review of the record and relevant case law indicates that summary judgment for the defendant on this cause of action is appropriate as well. Glover has presented insufficient evidence to establish any of the four (4) elements of the tort. As an example, he has failed to present any evidence that Lockheed intended to inflict severe emotional distress or that Lockheed's conduct in demoting him was "so severe and outrageous as to exceed all possible bounds of decency".

In his deposition, Glover describes how the personnel action was taken. Glover was called into George Pye's office and told that he was being surplussed. Glover requested Randy Simpson be brought to the office which was done. Glover admits that the entire meeting did not last 30 minutes and that George Pye spoke to him in a normal conversational tone. The meeting was civil, and Glover admits that Lockheed did not do anything uncivilized to him after the meeting. Instead, Glover focuses on the distress that he suffered as the result of his demotion. (Glover Depositions, Page 83, Lines 8–24).

As a matter of law, this evidence is insufficient to establish a cause of action for intentional infliction of emotional distress. The question whether a defendant's con-

duct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance. *Wright v. Sparrow,* 298 S.C. 469 at 472, 381 S.E.2d 503 at 506 (S.C.App.1989). While most adverse employment decisions are distressing to an employee, this effect of the decision on the employee is irrelevant to the tort. Outrage focuses solely on the defendant's conduct in dealing with the individual. *Corder v. Champion Road Machinery International Corp.,* 283 S.C. 520, 324 S.E.2d 79 (S.C.App.1984). Here, as in *Corder,* the defendant's conduct was not outrageous. *See also, Butts v. AVX Corp.,* 292 S.C. 256, 355 S.E.2d 876 (S.C.App.1987); *Todd v. South Carolina Farm Bureau Mutual Insurance Co.,* 283 S.C. 155, 321 S.E.2d 602 (S.C.App.1984), *modified on other grounds,* 287 S.C. 190, 336 S.E.2d 472 (1985); *Hudson v. Zenith Engraving Co.,* 273 S.C. 766, 259 S.E.2d 812 (1979).

## V. DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL

■ The plaintiff alleges that the doctrine of detrimental reliance/promissory estoppel entitles him to recover from the defendant in his fourth cause of action. Promissory estoppel is an equitable doctrine which provides that "an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sustain the perpetration of fraud or would result in other injustice." *Higgins Construction Co. v. Southern Bell Telephone & Telegraph,* 276 S.C. 663 at 665, 281 S.E.2d 469 at 470 (1981), *citing* 21 Am.Jur. 2d, *estoppel and waiver,* § 48, Pgs. 656–657 (1966). Promissory estoppel comes into play in situations where actual consideration is not present; it acts as a consideration substitute. *See, Duke Power Co. v. South Carolina Public Service Commission,* 284 S.C. 81, 326 S.E.2d 395 (1985).

■ Promissory estoppel is inapplicable in situations where a contract exists since a necessary element of a valid contract is consideration. Employment relations are necessarily contractual, even if the employment is on an at will basis, as here. Consequently, because some sort of contract exists in every employment arrangement, the doctrine of promissory estoppel is inapplicable.

In summary because the plaintiff has not come forward with facts sufficient to create a jury question on whether Lockheed's proffered non-discriminatory reasons for its employment action were pretextual and actually based on race discrimination, because the plaintiff has not shown that Lockheed's conduct rose to the level necessary to make it actionable under the tort of outrage and, lastly, because promissory estoppel is not a cause of action in an ongoing employment relationship, summary judgment on all plaintiff's causes of action should be granted.

Accordingly, for the reasons set forth above, it is recommended that the defendant's summary judgment motion be granted.

May 28, 1991.